Syllabus.

# Richmond.

## E. E. ROBERTS, ET ALS. v. NELL W. EDWARDS, ET ALS.

### March 19, 1925.

Case submitted for decision before Judge Kelly qualified.

1. JUDGMENTS AND DECREES—*Nunc Pro Tunc Judgments and Decrees—Power of Court to Enter—Time within which to Enter.*—The power of courts to make entries of judgments and orders *nunc pro tunc*, in proper cases and in furtherance of the ends of justice, has been recognized and exercised from the earliest times; and the period in which the power may be exercised is not limited.

2. JUDGMENTS AND DECREES—*Power of Court after Adjournment—Nunc Pro Tunc Decree.*—Orders of a court after adjournment are final and cannot be amended. But this principle cannot be applied so as to prevent the entry of decrees *nunc pro tunc* in proper cases.

3. JUDGMENTS AND DECREES—*Nunc Pro Tunc Judgments and Decrees—Classes of Nunc Pro Tunc Judgments and Decrees.*—There are two classes of cases in which orders *nunc pro tunc* have been justified. The first class embraces those cases in which the suitors have done all in their power to place the cause in a condition to be decided by the court, but in which, owing to the delay of the court, no final judgment has been entered. The second class of cases embraces those in which judgments, though pronounced by the court, have, from accident or mistake of the officers of the court, never been entered on the records of the court. But in Virginia courts have no longer (section 3567, Code of 1904, section 6470, Code of 1919), power to enter *nunc pro tunc* judgments or decrees of the character of the first class.

4. JUDGMENTS AND DECREES—*Nunc Pro Tunc Judgments—Office of Nunc Pro Tunc Judgment.*—The office of a judgment *nunc pro tunc* is to record some act of the court done at a former time which was not then carried into the record, and the power of the court to make such entries is restricted to placing upon the record evidence of judicial action which has been actually taken. It may be used to make the record speak the truth, but not to make it speak what it did not speak, but ought to have spoken.

5. Courts—*Minutes—Note by Trial Court.*—In this State there is no cus-
   tom of the judge to keep minutes which are official; but when there is
   a note for a decree which the trial judge, by personal endorsement,.
   directs the clerk to spread upon the minutes, and this note is identi-
   fied, it constitutes the very best evidence, where there is no proper
   enrollment thereof, of what the judge actually did.

6. Judgments and Decrees—*Nunc Pro Tunc Judgments and Decrees—*
   *Power of Court to Enter—Time within which to Enter—Case at Bar.—*
   In the instant case at the October term of court the judge of the cir-
   cuit court on October 9th endorsed and directed the entry of a parti-
   tion decree, but for some unexplained reason it was never enrolled or
   entered upon the records of the court by the clerk. The decree was
   construed by the special commissioners appointed thereby to direct
   them to sell the entire property, which they did upon the assumption
   that the decree had been enrolled and was effective. The pur-
   chaser, when he discovered that the decree had never been entered,
   and for other reasons, withdrew his bid and declined to comply
   therewith. At the December term of the circuit court a decree was.
   entered directing the clerk to record and enroll the partition decree
   as a *nunc pro tunc* decree, taking effect as of October 9th.
   *Held:* That, under the circumstances, the court had power to enter
   the *nunc pro tunc* decree.

7. Judgments and Decrees—*Nunc Pro Tunc—Order not a Matter of*
   *Course.—Nunc pro tunc* orders should not be entered as a matter of
   course. All of the circumstances as well as the omitted order should
   be carefully considered when the subsequent motion to enter it is.
   made. The motion should not be granted except for the preserva-
   tion of the rights of innocent persons who have rightfully relied
   upon it.

8. Judicial Sales—*Confirmation of Sale—Defect in Title—Directions of*
   *Decree not Carried out—Discretion of Court.*—Courts exercise a large
   discretion in refusing to confirm a report of sale, and in ordering a
   resale of property sold under a decree. They will not confirm a
   report of sale and compel a purchaser to complete his purchase
   when there is any defect of title of which he had no knowledge when.
   the sale was made. Nor will they confirm it when the directions of
   the decree in regard to the sale have not been pursued, if either
   party object to such confirmation.

9. Judicial Sales—*Partition Sale—Ambiguous Decree—Case at Bar.—*
   In the instant case a decree ordering the sale of land for partition was.
   ambiguous. The decree was obscure and subject to two possible
   constructions, first, that the entire tract was to be sold, and this was
   the construction placed upon it by the commissioners; and secondly,
   that only the one-half interest in the tract of certain parties was to
   be sold, and this was the construction put upon the decree by the
   Supreme Court of Appeals.

*Held:* That it was error to confirm the sale of the whole tract over the objection of the bidder who should have been permitted to withdraw his bid.

10. JUDICIAL SALES—*Necessity of Valid Decree.*—There can be no valid judicial sale without an order or decree directing the same. A sale of land other than that which is directed by the decree of the court to be sold is utterly null and void, and no title to the property passes thereby.

11. JUDICIAL SALES—*Partition Sale—Interests of Infants—Statutory Method Must be Pursued.*—A decree confirming a partition sale of land is erroneous, where there are infants interested in a moiety of the property of which they could not be divested except in the method prescribed by law, which method was overlooked or ignored in the partition proceedings.

Appeal from a decree of the Circuit Court of Buckingham county in partition proceedings. From a decree confirming the partition sale, the purchaser and others appeal.

*Reversed.*

The opinion states the case.

*Hester & Hester,* for the appellants.

*Perkins, Walker & Battle, Hubard & Boatwright,* and *Wm. M. Smith,* for the appellees.

PRENTIS, P., delivered the opinion of the court.

The fundamental question to be determined in this case is whether or not the court erred in confirming a judicial sale of a tract of 216 acres of land in Buckingham county to R. E. Roberts, the highest bidder therefor, at public auction. The land belonged in their lifetime one-half to William G. Edwards and one-half to John J. Roberts. Both of them were dead at the time of the decrees herein, and the property belongs one-half

to the heirs at law of William G. Edwards and the other one-half to the devisees of John J. Roberts and his widow, Martha Jane Roberts.

Nell W. Edwards, the widow of a son of William G. Edwards, instituted her suit for partition of the two other tracts of land, and also of the one-half interest in the 216 acre tract which had belonged to William G. Edwards, making his heirs at law (including her two infant children), E. E. Roberts and his wife, parties defendant thereto. In that suit the other real estate was sold, but the court refused to confirm the attempted sale of the entire tract of 216 acres, which was apparently contemplated, because at least one of those claiming under John J. Roberts was not a party to that suit. The Edwards bill was not amended, but another suit was then brought by E. E. Roberts against those claiming under John J. Roberts, deceased, to sell that undivided interest in the land, but the claimants as heirs at law of Edwards were not made parties to the Roberts suit. This bill was brought by E. E. Roberts, who apparently owned two-thirds of the Roberts moiety under the will of his father, John J. Roberts, and one-sixth thereof as a devisee under the will of his mother. One of the defendants to this suit was his sister, Martha Elizabeth Roberts, who is *non compos mentis.*

In this State of the record it appears that the Honorable J. T. Clements, judge of the seventh judicial circuit, who presided at the October term, 1923, of Buckingham Circuit Court, endorsed and directed the entry of a decree, the terms of which will be hereinafter quoted, but for some unexplained reason it was never enrolled or entered upon the records of the court by the clerk. That decree was construed by the special commissioners appointed thereby to direct them to sell the entire tract of 216 acres. Two of them gave the neces-

sary bond, and acted upon the assumption that the de-
cree had been enrolled and was effective.  At the sale
made pursuant to this understanding, E. E. Roberts,
the plaintiff in the second suit above referred to, was
the highest bidder for the property.  Thereafter, when
he discovered that the decree had never been entered,
and for other reasons, he withdrew his bid and declined
to comply therewith.  Then, at the December term,
1923, the Honorable James L. McLemore presided, and
entered a decree in these words:

"At a circuit court held for Buckingham county on
December 11, 1923.

"Nell W. Edwards, complainant,

    v.

"John W. Edwards, in his own right and as adminis-
trator of Wm. G. Edwards, deceased; Florence Ed-
wards Jeffrey and Owen R. Jeffrey, her husband;
Wm. Gravatt Edwards and Edna Ruth Edwards,
his wife; Lewis Edgar Edwards, Randolph Wm.
Edwards, Mary Clarence Roberts, and Chas. T.
Roberts, her husband; Griffith Henry Edwards and
Jane Gertrude Edwards, his wife; Lorna Walthall
Edwards and Geo. Russell Edwards, infant chil-
dren of Geo. R. Edwards; E. E. Roberts and Mar-
tha Jane Roberts, his wife; Richmond Slate Com-
pany, Incorporated, and Virginia Slate Company,
Incorporated; and L. W. Wood, guardian *ad litem*
for the infant defendants, defendants; and

E. E. Roberts, complainant,

    v.

Mrs. Theresa V. Evans and W. T. Evans, her husband;
Mrs. Nannie E .Singer, widow; Mrs. Ida J. Thomas,

widow; Owen P. Thomas and Mrs. Owen P. Thomas, his wife; Martha Elizabeth Roberts, a *non compos mentis;* and L. W. Wood, guardian *ad litem* for Martha Elizabeth Roberts, defendants.

"These causes which have been consolidated, and to be heard and prosecuted together, came on this day to be heard upon the papers formerly read, and was argued by counsel.

"On consideration whereof, and it appearing to the court that the decree signed by the judge of this court at the October term, 1923, and to be entered, recorded and enrolled in the chancery order book of the court as of October 9, 1923, has not been recorded and enrolled, through oversight and a mere clerical error has occurred. And it further appearing to the court that the clerical error has just been discovered, and the parties to this cause, by counsel, and the special commissioners appointed by the decree aforesaid, have acted under the aforesaid decree as if it had been entered and recorded on the chancery order book of the court at the October term, 1923. And it further appearing that all of the parties interested in the subject matter of this suit are before the court, and most, if not all of said parties, are represented by counsel and that the rights of no one interested have been prejudiced or violated by the failure of the clerk of the court to record and enroll the decree signed at the October term, 1923, of this court, the court doth adjudge, order and decree that the clerk of this court be, and he is hereby, directed to record and enroll said decree as of this date, as a *nunc pro tunc* order and decree, and when enrolled and recorded, the said decree shall take effect as of October 9, 1923, and shall have the same effect and validity as if it had been en-

rolled and recorded by the clerk of the court at the October term, 1923, of the court."

Then follows the *nunc pro tunc* decree:

"At a circuit court held for Buckingham county on December 11, 1923.

"E. E. Roberts, plaintiff,
    v.
"Mrs. Theresa V. Evans and W. T. Evans, her husband; Mrs. Nannie E. Singer, widow; Mrs. Ida J. Thomas, widow; Owen P. Thomas and Mrs. Owen P. Thomas, his wife; Martha Elizabeth Roberts, a *non compos mentis*; and L. W. Wood, guardian *ad litem* for Martha Elizabeth Roberts, defendants.

"On motion of the plaintiff, L. W. Wood, a discreet and competent attorney at law of Charlottesville, Virginia, is assigned as the guardian *ad litem* to the *non compos mentis*, Martha Elizabeth Roberts, to defend her interests in this suit, and thereupon the said guardian *ad litem* filed the answer of the said *non compos mentis*, and his own answer on oath, to the bill of the complainant; and this cause coming on this day to be heard upon the complainant's bill, proof of legal service of process on the above named defendants in person, who have failed and still fail to appear, plead, demur or answer the said bill, which is taken for confessed as to them, the answer of the *non compos mentis*, Martha Elizabeth Roberts, by L. W. Wood, her guardian *ad litem*, to said bill, the complainant's replication to the said answer, and was argued by counsel.

"On consideration whereof, and it appearing to the court from the pleadings in this case that the real estate of which John J. Roberts and his devisees died seized

and possessed—the said real estate being one-half un-
divided interest in a certain tract of land lying in the
county of Buckingham, near Arvonia, Virginia, now
known as the Ordway land, containing 216 acres more
or less, and described as lying in Marshall magisterial
district of Buckingham county, Virginia, on Hunt's
creek, about twenty miles northeast from Buckingham
courthouse—is not susceptible of partition in kind, and
that it would be to the interest of all parties concerned
for the same to be sold and the proceeds divided; and
further, that it would be to the interest of the incompe-
tent defendant to have the property sold and the pro-
ceeds divided, and that the sale of the same will not be
violative of the rights of any party interested, the court
doth adjudge, order and decree that John B. Boat-
wright, A. L. Pitts, Jr., William H. Smith and George
W. Walker, be, and they are hereby, appointed special
commissioners of this court, whose duty it shall be to
sell said real estate, the same being described as follows:

"A certain tract of land containing 216 acres, more
or less, situated in Marshall magisterial district, and
assessed on the land books under the head of mineral
lands, in the names of E. E. Roberts and W. G. Ed-
wards.   And which land is further described as being
on Hunt's creek about twenty miles northeast of Buck-
ingham courthouse.

"The court doth further adjudge, order and decree
that the aforesaid commissioners, either one or more
of whom shall have authority to act, upon the execu-
tion of the bond hereinafter required, shall sell the said
land at public auction in front of the post office in the
town of Arvonia, Virginia, or such other place in the
county of Buckingham as the commissioners, or the
acting ones, shall deem best.

"Said sale shall be made at public auction, after

advertising the time, terms and place thereof for thirty days by printed handbills, posted on the premises and at other conspicuous places in the county, and shall, if said commissioners or the acting one deem it advisable, advertise the time, terms and place of sale by insertion of the same once a week for two weeks prior to said sale in one or more newspapers published in the county of Buckingham or the city of Richmond, or both, as said commissioners or the acting one may deem best.

"Said commissioner, or the acting one or ones, shall have the right to publish advertisement of this sale in other newspapers published in the State of Virginia should they or he deem it advisable.

"Said land shall be sold upon the following terms: One-third cash and the balance in equal installments of one, two and three years, to be evidenced by bonds of the purchaser bearing six per cent interest from date of sale until paid, and containing waiver of the homestead exemption; and the title to said property shall be retained as security for the payment of said bonds.

"Should any purchaser elect, he shall have the option to pay all the purchase money in cash.

"And the court doth further adjudge, order and decree that the said commissioners, or the acting one, shall make full report of their proceedings hereunder to this court.

"And the court doth also adjudge, order and decree that before any of said commissioners hereinbefore named shall have authority to act, or shall act under this decree, they shall execute a bond in the penalty of $10,000.00 before the clerk of this court, conditioned according to law.

"And the court doth further adjudge, order and decree that this cause be referred to G. H. Rogers, a

master commissioner of this court, whose duty it shall be to inquire and report to the court as follows:

"First: A statement showing who are the heirs of John J. Roberts and Martha Jane Roberts, and what interest each may own in the 216 acre tract of land directed to be sold herein; and whether all such persons are properly before the court in this cause.

"Second: A statement showing the liens, if any, upon said 216 acre tract of land, with their priorities.

"Third: A statement showing how purchase money derived from the sale of said 216 acre tract of land should be distributed among the heirs of John J. Roberts and the heirs of Wm. G. Edwards.

"Fourth: Any other accounts which said commissioner may deem pertinent, or which may be required by any party in interest to be stated.

"Which said inquiries the said commissioner shall make, after giving ten days' written notice of the time and place thereof to all parties or their counsel.

"And on motion of plaintiff, the court doth further adjudge, order and decree that this cause be consolidated with the chancery cause now pending in this court under the name and style of *Nell W. Edwards* v. *William G. Roberts and others,* and that the said two causes be hereafter prosecuted and proceeded with together."

From this it will be seen that the decree which Judge Clements had directed to be entered October 9th was, on December 11th, entered *nunc pro tunc* over the objection of the purchaser and those claiming with him the Roberts interest, and this is assigned as error. So that the controversy here is, broadly speaking, between the heirs at law of Edwards, insisting that Roberts is bound by his bid, and Roberts, who is claiming the

right to withdraw it and be discharged from any obligation thereunder.

[1] The first question then to which our attention is directed is, whether or not the alleged decree of October 9th should have been entered to be effective from that date on December 11th, *nunc pro tunc.*

In *Weatherman's Case*, 91 Va. 799, 22 S. E. 350, Riely, J., who always measured his words carefully, said: "The power of the court to make entries of judgments and orders *nunc pro tunc*, in proper cases and in furtherance of the ends of justice, has been recognized and exercised from the earliest times; and the period in which the power may be exercised is not limited."

[2] Counsel for the appellants argue with great earnestness that this action was invalid, basing the contention upon the established rule that the orders of a court after adjournment are final and cannot be amended. The principle must be conceded, but has never been so applied as to prevent the entry of decrees *nunc pro tunc* in proper cases.

[3, 4] The subject was recently considered by this court in *Cox* v. *Hagan*, 125 Va. at p. 675, 100 S. E. 666. There it is shown that there are two classes of cases in which orders *nunc pro tunc* have been justified. The first class embraces those cases in which the suitors have done all in their power to place the cause in a condition to be decided by the court, but in which, owing to the delay of the court, no final judgment has been entered. The second class of cases embraces those in which judgments, though pronounced by the court, have, from accident or mistake of the officers of the court, never been entered on the records of the court. 4 Am. St. Rep., pages 828-830, note; Freeman on Judgments (4th ed.), section 57; 15 R. C. L., section 63, page 622, *et seq.* After showing that in the first class

the subject in this State is now controlled by statute, which provides that judgments are effective from the actual date upon which they are entered, this is said: "In view of the history of the subject and of the last mentioned statutory provision, we are of opinion that whatever may be true of other jurisdictions, with us the courts no longer possess the power to enter *nunc pro tunc* judgments in cases falling within the first class, but only possess such power in cases falling within the second class, above mentioned.   That is to say, we are of opinion that with us 'the office of a judgment *nunc pro tunc* is to record some act of the court done at a former time which was not then carried into the record and the power of the court to make such entries is restricted to placing upon the record evidence of judicial action which has been actually taken.   It may be used to make the record speak the truth, but not to make it speak what it did not speak, but ought to have spoken. If the court has not rendered a judgment that it might or should have rendered   *   *   *   it has no power to remedy these errors or omissions by ordering the entry *nunc pro tunc* of a proper judgment.   *   *   In all cases' (in this State, certainly since said statute of the Acts of 1897-8 was enacted) 'the exercise of the power to enter judgments *nunc pro tunc* presupposed the actual rendition of a judgment, and a mere right to a judgment will not furnish the basis for such an entry.' 15 R. C. L., section 64, pages 622-3."

Tested by this rule, if the discretion was properly exercised, three can be no doubt of the power of the court to enter the October decree in December *nunc pro tunc*.

In a case quite like this, *Reid* v. *Morton*, 119 Ill. 133, 6 N. E. 414, it appears that a sale of land had taken place June 25, 1866.   It had been made by a guardian

and approval of court was there necessary in order to devest the title of the ward, and the court records showed no such approval. It did appear, however, that the judge had endorsed his approval on the guardian's report of sale. Then in 1882 an order was entered in this language: "It is ordered, adjudged and decreed by the court, that the report of sale in this suit made by Mary M. Olcott, guardian, under a former decree of this court, having been approved by this court on the 22d day of November, A. D., 1866, as fully appears by the indorsement on said report by the judge of this court, at that day, and the approval of said report not having been entered by said judge on the docket, approved, the said report of said sale is approved *nunc pro tunc.*" And this is said: "We think such order was properly made, and that it showed a valid approval of the report of sale. It was but spreading upon the record what had actually been done by the court, as appeared by the judge's minutes, but had failed to be entered of record. The power of a court to correct its records in accordance with its own minutes is undoubted."

[5] In this State there is no custom of the judge to keep minutes which are official; but when there is a note for a decree which the trial judge, by personal endorsement, directs the clerk to spread upon the minutes, and this note is identified, it constitutes the very best evidence, where there is no proper enrollment thereof, of what the judge actually did.

[6, 7] The recitals of fact made in the decree of December 11th, introductory to the *nunc pro tunc* order, show the facts which fully sustain the power of the court to enter the decree. Such orders, however, should not be entered as a matter of course. All of the circumstances as well as the omitted order should be

carefully considered when the subsequent motion to enter it is made. The motion should not be granted except for the preservation of the rights of innocent persons who have rightfully relied upon it.

[8, 9] In this case the nunc pro tunc order is itself obscure and subject to two possible constructions. From its caption it appears to have been entered in the Roberts suit, and having directed a sale of the property involved therein concludes with ordering that the cause be consolidated with a chancery cause now pending in this court under the name and style of *Nell W. Edwards* v. *William G. Roberts* and others, and proceeded with together. It may be conceded that in referring to the case of *Nell W. Edwards* v. *William G. Roberts*, the decree referred to the case of *Nell W. Edwards* v. *John W. Edwards and others*, because this was the only other suit relating to the property involved. However this may be, this mistake is but an example of the careless and inartificial way in which this important litigation has been conducted.

The construction of this decree becomes of vital importance. Under it the heirs at law of Edwards, parties to the Edwards partition suit, are claiming that the entire tract, that moiety belonging to them as well as that belonging to the Roberts claimants and involved in the Roberts suit, were both directed to be sold. A reference to the decree shows that this can hardly be maintained. Adverting thereto we find that the court adjudges that John J. Roberts and his devisees died seized and possessed of a one-half undivided interest in a certain tract of land lying in the county of Buckingham, near Arvonia, Virginia, now known as the Ordway land, containing 216 acres more or less; that it "is not susceptible of partition in kind, and that it would be to the interest of all parties concerned for the

same to be sold and the proceeds divided." It then appoints four commissioners, "whose duty it shall be to sell said real estate, the same being described as follows," and then follows a description of the whole land. Waiving the doubt as to whether in that state of the record the court had jurisdiction to sell the land as a whole, the question is, did that decree direct the sale of the one-half interest belonging to the Roberts estate, or did it direct a sale of the whole? A careful consideration of its language leads us to the conclusion that it can only be construed to direct the sale of the Roberts one-half interest. Under this construction Roberts should have been permitted to withdraw his bid; and this, from *Daniel, et al.* v. *Leitch,* 13 Gratt. (54 Va.) 211, is conclusive: "Our courts certainly exercise a large discretion in refusing to confirm a report of sale, and in ordering a resale of property sold under a decree. They will not confirm a report of sale and compel a purchaser to complete his purchase when there is any defect of title of which he had no knowledge when the sale was made. Nor will they confirm it when the directions of the decree in regard to the sale have not been pursued, if either party object to such confirmation. Accordingly, in *Talley, &c.* v. *Starke's Adm'r,* 6 Gratt. 339, in which the land was not sold on the premises as directed by the decree, and the confirmation of the report was opposed by two of the purchasers on that ground, this court, for that and other reasons, reversed the decree of confirmation; saying that inasmuch as the purchasers could not have enforced their contracts, if resisted by the parties in the cause, they ought not to be compelled to perfect them. If, therefore, there was any defect in the title which the purchaser could acquire under the decree in this case, the court on his motion would have refused to confirm

the report of sale, and discharged him from his purchase."

[10] The general rule is thus stated in 24 Cyc. at page 9: "There can be no valid judicial sale without an order or decree directing the same. A sale of land other than that which is directed by the decree of the court to be sold is utterly null and void and no title to the property passes thereby." And there is no lack of other authority to support this general rule.

[11] Applying it to the facts of this case, then, we find that there are two infants interested in the Edwards moiety of the property of which they cannot be divested except in the method prescribed by law. That this method has been overlooked or ignored is perfectly apparent from this record.

One test which seems to us to be conclusive is this: Suppose the bid of Roberts had been considered by the Edwards heirs at law to be inadequate and they had appeared to oppose its confirmation upon the ground that the decree only authorized the sale of the Roberts interest, and contended that the rights of neither the adults nor the infants could be disposed of by the court in such a summary manner, can there be any doubt that their objection would have been sustained? We think not.

Even if these adults could waive their rights, there is one incompetent interested in the Roberts moiety and two infants interested in the Edwards moiety of land whose rights cannot be waived.

We are therefore of opinion that none of the subsequent decrees complained of which confirmed the sale should have been entered. As we have indicated, this is not because of lack of power to enter the omitted decree of October 9th, *nunc pro tunc*, but because, under the facts shown by this record, there are so many

irregularities that no man is wise enough to know what questions might be fairly raised in the future as to the title to this property.

We have concluded, therefore, that the only safe procedure for the protection of every interest is to hold that all of the decrees complained of are erroneous, and therefore should be reversed, and the record in the circuit court should stand as it was before any of them was entered—that is, as it was on October 9, 1923; and that the cases be further proceeded with as those interested may be advised, in accordance with well established rules.

*Reversed.*