# Staunton

CARL SAULS V. THOMAS ANDREWS AND COMPANY, ET ALS.

September 20, 1934.

Present, Campbell, C. J., and Holt, Epes, Browning and Chinn, JJ.

The opinion states the case.

*W. B. Phipps* and *Rose & Rush,* for the plaintiff in error.

*G. Mark French,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Thomas Andrews and Company was a judgment creditor of Carl Deel. On its judgment execution issued as of October 17, 1930, and on October 23, 1930, was levied upon an automobile then in Deel's possession. Sauls claimed to be its owner and sought to prevent its being subjected to the payment of Deel's debt.

On November 8, 1930, this memorandum was made in the clerk's office of the Circuit Court of Dickenson county:

"Carl Sauls, Petitioner.

　　　　*vs.*

"Thomas Andrews & Co., Carl Deel, and S. P. Hibbitts, Deputy Sheriff for G. F. Kiser, Sheriff of Dickenson county, Va.

"Issue process returnable to second December rules 1930, summoning defendants to answer petition then to be filed by Carl Sauls claiming one automobile levied on by S. P. Hibbitts, deputy sheriff for G. F. Kiser, sheriff of Dickenson county, Virginia, on an execution in favor of Thomas Andrews and Company, against Carl Deel."

On November 11, 1930, Sauls executed a suspending bond, its purpose being to stay the enforcement of the execution until his rights could be determined, and on November 22, 1930, he filed his petition setting forth his claim in detail, the substance of it being that the automobile belonged to him and not to Deel. Process issued and was duly served. On March 10, 1931, plaintiff moved that the defendant be required to file a statement of its grounds of defense. That motion was sustained and the defendant, desiring time, was

given until the 11th of March, 1931, to comply with this order. Such a statement was filed. It reads:

"The defendant comes and says that the goods, the car levied on in this case, is the property of Carl Deel and was paid for by him and that the claim of Carl Sauls is an attempt to hinder, delay and defraud the creditors of Carl Sauls. That the car was paid for by Carl Deel."

Thereupon, in an order of that date, this appears: "The defendant, Thomas Andrews and Company on the 11th day of March, 1931, filed its grounds of defense and issue was joined thereon." The case came on to be heard and on motion of the defendant, a jury was called and chosen, but before it was actually sworn this additional ground of defense was tendered and accepted:

"That a suspending bond was given in this case; that no proceedings were instituted within thirty days of the giving of the suspending bond. That no suspending bond was given within thirty days of the levy on the car. That the car was in the possession of Carl Deel when it was levied on. That the car is liable for the payment of Def. Execution. That the petition is in equity and not at law."

By consent there was a continuance to the July term and on July 7th, the jury returned this verdict:

"We the jury find for the plaintiff Carl Sauls, S. R. Adkins, Foreman."

Thereupon the court entered this order:

"It is therefore considered by the court that the plaintiff Carl Sauls, recover of the said defendant Thomas Andrews and Company, the automobile sued for, and his costs in this behalf expended."

On September 1, 1931, and presumably at the same term, "the defendant moved the court to set aside the verdict of the jury heretofore entered in this case, which motion the court takes time to consider."

On June 20, 1933, there was entered this final judgment:

"This day came again the parties by their attorneys, and the defendant, Thomas Andrews and Company having heretofore made a motion to set aside the verdict of the jury and

enter judgment for the defendants, which motion was opposed by the plaintiff, Carl Sauls, and which motion the court took under advisement and upon consideration whereof the motion is hereby sustained and the verdict of the jury is set aside and final judgment entered for the defendant."

We have seen that a memorandum of this proceeding, calling for process, was entered in the clerk's office on the 8th of November, 1930; that a suspending bond was given on the 11th of November, 1930, and that petition asserting title was filed on November 22, 1930.

We have also seen that after issue was joined the defendant was allowed to file an additional ground of defense in which it said, "a suspending bond was given in this case; that no proceedings were instituted within thirty days of the giving of the suspending bond."

Code, section 6156, provides that "the officer having such process * * * shall * * * proceed to execute the same notwithstanding such claim unless the claimant of said property or some one for him shall give the suspending bond aforesaid, and shall within thirty days after such bond is given proceed to have the title to said property settled in accordance with the provisions of this chapter. And in case such claimant or some one for him fails to give such bond or having given such bond fails to have such proceedings instituted as aforesaid to settle the title thereto, said property shall be conclusively presumed to be the property of the party in possession."

Code, section 6152, declares that when property is taken under execution, and "any person, other than the party against whom the process issued, claims such property or the proceeds or value thereof, the circuit court of the county, or the circuit or corporation court of the corporation in which the property is taken, or the judge of such court in vacation, upon the application of the officer, where no indemnifying bond has been given, or, if one has been given on the application of the person who claims such property, and has given such suspending bond as is herein-

after mentioned, or of the party issuing said process, may cause to appear before such court as well the party issuing such process as the party making such claim, * * *."

It is contended that there was no application by the claimant to the Circuit Court of Dickenson county or to its judge in vacation for leave to test title to this automobile and therefore that no proper proceeding was instituted within thirty days of the date of the suspending bond.

Before this defense was interposed the defendant appeared and as a grounds for its claim said that the automobile belonged to Deel and not to Sauls, and on that claim issue was joined.

The court had substantive jurisdiction and this plea came too late.

"Of course, if a writ issues irregularly or the service thereof is imperfect a party may appear specially and plead in abatement, but where he does neither and appears generally, then whatever may have been the defect in the process or the service is waived, for general appearance constitutes waiver of such defect." *Scott* v. *Scott*, 142 Va. 31, 128 S. E. 599, 600; *Lane Bros. & Co.* v. *Bauserman,* 103 Va. 146, 48 S. E. 857, 106 Am. St. Rep. 872; *Morgan* v. *Pennsylvania R. Co.,* 148 Va. 272, 138 S. E. 566.

If this statute be construed to mean that application for relief can be made to the judge only while the court is in vacation we can easily envision an impossible situation. Proceedings must be instituted within thirty days after the suspending bond has been given—that is to say, application for relief must be made within that time. Judges, when their courts are not in session, are sometimes not available. They go on vacation and cannot be found. To hold in such a case that there can be no relief is a flat denial of justice. That one man's property cannot be taken to pay another's debts, and that its owner is entitled to an opportunity to be heard is too plain for argument. These statutes are remedial and are to be liberally construed and are not to be construed in such manner as to make them unconstitutional if it can be avoided. *H. L.*

*Carpel, Inc.* v. *City of Richmond,* 162 Va. 833, 175 S. E. 316, decided June, 1934. We are of opinion that when memorandum has been made, process issued and served, and petition filed, there has been such an appeal to the court as to bring the controversy within the purview of the statute.

The defendant cannot prevail for another reason. When the jury's verdict was returned the court entered judgment thereon. About two months later, and presumably at the same term, it moved the court to set aside this verdict, that and nothing more.

The order of the court became final upon the adjournment of the term. *Roberts* v. *Edwards,* 141 Va. 338, 127 S. E. 307. It is true that matters ready for decision and not decided stand over. Code, section 5972. Here there was nothing before the court but a motion to set aside a verdict made after a judgment thereon had been entered. It was but an idle gesture. Two years later when it came to enter judgment is this entry and recital: The defendant "having heretofore made a motion to set aside the verdict of the jury and enter judgment for the defendants, etc." As a matter of fact no such motion had been made. This was no case for a *nunc pro tunc* order.

" 'There are two classes of cases in which it has been held proper to enter judgments and decrees *nunc pro tunc.* The first class embraces those cases in which the suitors have done all in their power to place the cause in a condition to be decided by the court, but in which, owing to the delay of the court, no final judgment has been entered. The second class embraces those cases in which judgments, though pronounced by the court, have, from accident or mistake of the officers of the court, never been entered on the records of the court.' Note in 4 Am. St. Rep. at pages 828-830. * * * It may be used to make the record speak the truth, but not to make it speak what it did not speak, but ought to have spoken." *Cox* v. *Hagan,* 125 Va. 675, 100 S. E. 666, 671; *Roberts* v. *Edwards, supra.*

Let us now look to the merits of these claims.

o

This is Sauls' statement made in cross-examination:

"Q. You say Carl Deel run this car?

"A. Yes, sir.

"Q. He kept it in his possession most of the time?

"A. Yes, sir.

"Q. And he helped pay for the car?

"A. No, sir.

"Q. Did he ever pay you anything for the car?

"A. I swapped cars with him.

"Q. And he took this one?

"A. Yes, sir.

"Q. What was the terms of your swap?

"A. I bought the car in 1928, and in 1929 he wanted a closed car, and I told him I would swap provided I could trade the car, and he asked me what I would take to boot and I told him $600, and he said he could not pay the difference.

"Q. You turned the car, levied on, over to him?

"A. I turned the car levied on to him, and he turned the other car over to me.

"Q. You held the title for the payment of the $600?

"A. Yes, sir.

"Q. How much of the $600 was paid to you?

"A. Not one dime."

Deel said: "I had a Dodge touring, and I wanted a closed car and he said I will let you have mine and I said I was not able to pay the difference, and he said if I can sell your car, I will give you credit on it for what I receive and you can pay me the balance, and he said I will hold the title until the car is paid for and I said that would be all right, and I said I would have a closed car of my own."

The car was registered in Sauls' name; taxes were assessed against it as belonging to him and were paid by him. This case is controlled by that of *Thomas* v. *Mullins*, 153 Va. 383, 149 S. E. 494, 495. There these facts appear:

"On the 19th day of July, 1927, plaintiff sold to the defendant certain real estate in consideration of the sum of $3,000, the receipt of which is acknowledged in the deed of

conveyance. As a part of the purchase price, defendant, who was an automobile dealer, was to deliver to plaintiff an automobile to be selected by plaintiff from a number of automobiles owned by defendant, at the stipulated price° of $1,325. On August 17, 1927, defendant's garage and his stock of automobiles were destroyed by fire."

This instruction there given we approved:

"The court instructs the jury that, although you may believe from the evidence that S. G. Thomas agreed to sell and Minnie Mullins agreed to buy the Wolverine automobile in question at a price of $1,325, and that Minnie Mullins paid to S. G. Thomas the purchase price thereof by giving him credit for that amount on the purchase price of the real estate sold by her to him, yet, if you further believe from the evidence that no assignment of title to and notice of transfer of said automobile had been executed on the form prescribed by the Motor Vehicle Commissioner as provided by statute and delivered by S. H. Thomas to Minnie Mullins at the time of the fire which destroyed said automobile, then the contract of sale was merely executory and not executed, and the title to the said automobile, at the time of the fire, had not passed to Minnie Mullins but remained in S. G. Thomas, and you must find for the plaintiff the sum of $1,325, with interest thereon from the 19th day of August, 1927."

■ The court rested its decision upon the act of 1926, chapter 149, which so far as it affects the instant case, has not been changed. Mr. Justice Campbell said that, "in order to complete the sale upon his part, it is essential that the seller conform to the statutory requirement by delivering to the buyer a proper assignment of title." Until this was done the contract was executory.

Here there was no assignment of title for it was not intended that it should be assigned. On the contrary it was deliberately retained. Deel paid ·nothing and the balance due is probably twice what the car is worth.

■ The mobile character of property of this kind makes registration of title and uniformity of registration

doubly important. Deel has no title to this car legal or equitable and his creditors cannot seize it. These statutes governing registration are essentially police regulations, and must be observed.

The judgment of the trial court should be reversed, and it is so ordered.

*Reversed.*