# CHARLESTON.

### THOMAS D. GORBY v. GEORGE BRIDGEMAN.

Submitted April 8, 1919.   Decided April 15, 1919.

1. SALES—*Implied Warranties—Merchantable Article.*

Where an article of personal property is sold by executory con-
tract by a particular description or name, there is an implied con-
dition or warranty that it will be, when delivered, a merchantable
article of the kind and description sold. (p. 732).

2. SAME—*Breach of Warranty—Measure of Damages.*

Where in such case the article delivered is of the same general
description as the article sold, but is not a merchantable article
of the kind purchased, the measure of damages for the failure to.
furnish such merchantable article of the kind agreed to be fur-
nished to the defendant is the difference between the value of
such article, had it been as warranted, and the actual value of the
article furnished at the time it was delivered. (p. 733).

3. EVIDENCE—*Breach of Warranty—Evidence of Value.*

The price at which an article is sold by a regular dealer in the
ordinary course of trade is evidence of its value. (p. 735).

Error to Circuit Court, Wetzel County.

Action by Thomas D. Gorby against George Bridgeman.
Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Larrick & Lemon,* for plaintiff in error.
*H. H. Rose,* for defendant in error.

RITZ, JUDGE:

The plaintiff is a dealer in automobiles at Middlebourne,
in Tyler county, West Virginia, and the defendant is a den-
tist practicing at New Martinsville, in Wetzell county. In
the month of April, 1913, after some negotiations in regard
thereto, the defendant purchased from the plaintiff a five
passenger Mitchell automobile. He claims that at the time
of the purchase the plaintiff explained to him that this
car was **superior to any** other car selling at the same price,
and advised him that it was the only one that he would
warrant to run satisfactorily, and that he did at the time

of the sale expressly warrant that this car would run satisfactorily and give him no trouble, and that in case any little troubles did arise he, the plaintiff, would be close at hand to remedy them, and it was upon the faith of this warranty that he made the purchase. The plaintiff denies that there was any express warranty, but says that all he agreed to do was to furnish a five passenger Mitchell automobile of the model of 1913. The plaintiff did not have the car in stock at the time of the contract, but the arrangement was that it was to be delivered by the first of June. A short time after the making of the contract plaintiff advised the defendant that it was uncertain whether he could secure a car for delivery to him by the first of June, but that he had a car which had been shipped to him for demonstrating purposes which he would turn over to fulfill the contract, which car was the same make as the car covered by the contract, and he also advised the defendant that before he, the plaintiff, could get this car he would have to pay therefor, and requested the defendant to advance him the money for that purpose. The defendant assented to this and paid the plaintiff, according to his contention, the sum of seven hundred dollars in cash, and for the residue gave his note for seven hundred dollars, and an additional $31.50, representing freight on the car. Subsequently there was one hundred dollars paid by the defendant on the note, which left $631.50 thereof remaining unpaid. It seems that this car was at the city of Wheeling, and after receiving this money and note from the defendant plaintiff sent to Wheeling, paid for the car, and had it shipped to New Martinsville by boat. Plaintiff's brother came along with it for the purpose of instructing the defendant in its use and teaching him how to run it. It was unloaded on reaching its destination and plaintiff's brother attempted to operate it. These efforts began on Friday morning after the car was unloaded, and continued all day Friday and Saturday, and resulted in demonstrating that the car would not operate. It would run for short distances and then stop. An examination developed that at least one of the causes of this trouble was that the

gasoline was not being supplied to the engine in proper quantities to operate the same. Plaintiff's brother left New Martinsville on Saturday evening and went to Middlebourne where he reported to the plaintiff that the car would not run. Plaintiff sent him back on Monday with some further instructions and advice in regard to its operation, and he again attempted to make it operate, but with no better success than on the previous Friday and Saturday. Plaintiff then sent other mechanics to put the car in running condition, but they did not succeed in this undertaking, so that after ten days or two weeks of efforts of this kind to get the car in condition for delivery to the defendant in fulfillment of the contract, and failure in that regard, the defendant notified the plaintiff to take the car away, that he would not accept it. The plaintiff, however, asked him to give him further time to see if the trouble could not be remedied, and upon his insistence the defendant assented to this. The plaintiff then came to New Martinsville himself and experimented with the car for sometime, but had no better success in curing the defects than the mechanics who had made previous attempts. He then procured mechanics to be sent from Wheeling, and they made efforts to make the car run, but were entirely unsuccessful. A mechanic was then dispatched by the manufacturer known as its trouble man, who did work on the car in an attempt to make it operate, but he had no better success than the previous mechanics. At this time the defendant insisted that he would not accept the car in fulfillment of the contract, and insisted that he be furnished another car meeting the requirements of the contract between the parties. This the plaintiff would not agree to do for sometime. Later on in the fall, however, the manufacturer of the car agreed that if this car was reshipped to it, it would replace it with a car of the same model. The defendant refused at that time to accept this in fulfillment of his contract, inasmuch as a number of months had passed since the car should have been delivered, and the model had become out of date. The car remained in New Martinsville during the winter of 1913-14, without any apparent efforts upon the part of the plaintiff to make it comply with his contract, or

to meet his obligations thereunder, notwithstanding he had the defendant's money and his obligation for the remainder of the purchase price. In the spring of 1914 the plaintiff asked to be permitted to reship the car to the manufacturer with a view to having it overhauled and put in running condition, if it could be done. This the defendant assented to, insisting that he had no control over the car, however, that the plaintiff could do what he pleased with it, but also agreeing that if it was put in running condition he would accept it on its return for what it was worth, but not in fulfillment of his contract. The plaintiff thereupon reshipped the car to the manufacturer in the name of the defendant, but without his knowledge that it was shipped in his name, and directed the manufacturer to reship it to the defendant when it was overhauled, likewise without his knowledge or consent. After the car was overhauled it was reshipped to the defendant at New Martinsville. Upon its arrival he was notified thereof by the station agent, and this he says, was the first knowledge he had that the car was shipped in his name, or handled in his name by the plaintiff. He advised the station agent that the car did not belong to him, but belonged to the plaintiff. The station agent advised the plaintiff that the car was there and asked him to have it removed, otherwise demurrage charges would be made against it. Plaintiff declined to take the car from the railway company, and upon being requested so to do by the defendant, and the defendant's attorney, he advised them that he would have nothing to do with the car and, as they state, informed them that he had the money and they had the car, and that is all the satisfaction he would give them on that occasion. The defendant contends that upon being thus informed by the plaintiff that he would have nothing to do with the car, and that it might stay in the station and its value be consumed entirely in demurrage so far as he was concerned, and realizing that he had already paid eight hundred dollars in money and had his note outstanding for $631.50, he determined to minimize as far as possible his loss, and took the car from the railway station, and had it valued by three men conversant with the values of automobiles. He had a man skilled in the use of automo-

biles attempt to operate the machine, but it was found that it would operate no better than it did on the prior occasions. He then turned it over to an automobile mechanic for the purpose of seeing what could be done in the way of putting it in condition to run. This mechanic made experiments on the car over a period of nearly a year, and finally after removing the gasoline transmission system and installing an entirely new one, and making sundry other changes in the car, all of which cost something over two hundred dollars, he succeeded in getting it to run reasonably well, although some of the appliances in connection therewith would not operate with entire satisfaction. The parties who appraised this automobile at the time the defendant received it from the railway company in July, 1914, testify that in their opinion the automobile was worth about seven hundred dollars, upon the theory that it could be made to operate satisfactorily as an automobile that is to say, its real value would be seven hundred dollars less such sum as it would take to make it so operate, which turned out to be something over two hundred dollars, as above stated. This is all the evidence as to the value of the automobile at the time of its delivery to the defendant. In the meantime the plaintiff had discounted the defendant's note, and upon its coming due and the plaintiff refusing to pay it the bank sued both the plaintiff and the defendant and recovered a judgment against both of them for the amount of the note with its interest, and collected the same from the plaintiff. Plaintiff thereupon brought this suit against the defendant for the purpose of recovering the amount which he was compelled to pay in satisfaction of the judgment thus obtained.

Upon the trial of the case the defendant filed his notice of recoupment claiming that by reason of the plaintiff's failure to deliver him a car in accordance with his contract he was damaged in an amount equal to the amount sued for, and for that reason that the plaintiff was not entitled to recover, and further filed an offset for an amount which he claimed the plaintiff owed him for dental work done by him. Upon the trial of the case the jury found a verdict in favor of the plaintiff for the sum of four hundred dollars, and upon this

verdict the court rendered judgment. The amount paid by the plaintiff in satisfaction of the judgment obtained by the bank against him and the defendant was the sum of $718.27. It will thus be seen that the jury allowed the defendant on account of his notice of recoupment and offset something over three hundred dollars as a credit against the plaintiff's claim. The defendant prosecutes this writ of error and claims that the court erred to his prejudice in instructing the jury on behalf of the plaintiff, and also in refusing to give certain instructions offered by him.

A great deal of argument is indulged in by counsel as to the nature of the warranty made by the plaintiff, if there was any warranty in this case. The plaintiff's counsel contends that inasmuch as the defendant admits that he purchased a five passenger Mitchell automobile of the 1913 model, that there could not be any express warranty of quality of this machine. This does not necessarily follow at all. It is ordinarily true that where an article is sold under an executory contract by description, or by a certain trade name, there is an implied warranty that it will be a merchantable article of the kind described, but this implied warranty of merchantability will not ordinarily arise where there is an express warranty of quality. Mechem on Sales, § 1342. In this particular case we have an executory contract for the sale of a particular kind of automobile, according to the defendant's contention, with an express warranty as to its quality, and, according to the plaintiff's contention, with only an implied warranty that it would be a merchantable article of the kind bought. As to which of the parties is correct depends upon how the jury will find the facts as between them. If they find that there was an express warranty as contended for by the defendant, then reliance must be had thereon. If, however, they find there was no such express warranty, then the recoupment asked for by the defendant must be based upon the implied warranty or condition that the automobile furnished would be a merchantable one of the kind purchased. So far as the merits of this controversy go it can make little difference which party's contention is correct. It is proved beyond doubt, in fact it is not sought to be denied,

that the automobile delivered was not a merchantable automobile of the kind sold. Plaintiff makes no effort to prove it was. In fact, he by his conduct, if not by his express admissions, confesses that such is the case. The only question upon which there seems to be any difficulty is the proper measure of the defendant's damages. That there was a breach of the warranty, whether it be an express one, as contended for by the defendant, or an implied one, as contended for by the plaintiff, is conceded by the evidence, and the only question is, what is the effect of this breach upon the parties? It may be said that the measure of damages for a breach of warranty of quality of personal chattels, whether the same is express or implied, is the difference between their value at the time of the sale, considering them as corresponding with the warranty, and their value at the time of delivery with the defect complained of. Sutherland on Damages, § 670 and authorities there cited; *Muller* v. *Eno,* 14 N. Y. 597. The plaintiff admits this to be the rule. The court on motion of the plaintiff gave two instructions to the jury of which complaint is made, they being as follows: "The Court instructs the jury that, even though you believe from the evidence that the automobile sold by the plaintiff to the defendant had defects which it was expressly warranted by the plaintiff not to have, yet if the defendant accepted the same he is only entitled to such an amount by way of damages by reason of such defects as is equal to the difference between the value of the said automobile as it was warranted and the value thereof as it actually was at the time it was delivered to the defenant." "The Court instructs the jury that, even though you believe from the evidence that the automobile sold by the plaintiff to the defendant had defects which it was expressly warranted by the plaintiff not to have, yet if notwithstanding such defects the defendant accepted the said automobile and himself made repairs of any such defects you shall not allow the defendant any damages or abatement from the purchase price by reason of any such defects so repaired by him, except such *actual costs and expenses* as were reasonably necessary to make such repairs." The instruction first quoted properly states the rule for the measurement of damages, as

we have above laid down.   The other instruction, it will be noticed, however, states to the jury that the measure of damages in such case, where the defendant made repairs of the defects is the cost of making the repairs.   This latter instruction is based upon those authorities which lay down the measure of damages to be the cost of repairing defects in a case where such repairs give to the vendee substantially the thing he contracted for.   Where an article is furnished under a contract, which is defective in some small particular, and the defendant repairs it at small cost, it is usually held that the cost of making such repairs is the measure of his damages. *Stilwell & Bierce Mfg. Co.* v. *Phelps,* 130 U. S. 520.   But upon analysis this is only a statement in another form of the rule as above laid down.   In a case where slight repairs would make the article delivered equal to and substantially the article contracted for, the cost of making such repairs is the measure of damages because it represents the actual difference betwen the article contracted for and the one furnished.   This rule cannot be applied, however, in a case where after making the repairs the article furnished is still defective, and does not meet the substantial requirements of the contract.   The plaintiff argues, however, that these instructions correctly propound the law controlling in this case; that under the latter the jury would find as to such defects as had been repaired the cost of repairs, and determine that the defendant was damaged to this extent because of those particular defects which had been repaired; and then if the machine was not as good as the one sold, the jury would add to the cost of making the repairs the difference in the value of the machine as thus repaired and its value had it been as warranted.   The trouble about the second instruction as to the measure of damages being the cost of making repairs is that a jury would hardly give it the construction which the plaintiff contends for, and their verdict in this case indicates clearly that they did not give to it that meaning, for the reason that all that they allowed the defendant by way of recoupment was the actual cost of the repairs made by him, while it is admitted that the machine which he got was in no wise equal in value to the machine he contracted

for.  But the plaintiff says that the reason of this is that there is no evidence as to what the value of the machine would have been had it been as warranted, and that while the evidence may show that the defendant got an inferior automobile to that which the plaintiff sold to him and warranted he should get, even after he had spent money in making the repairs, still he could recover no other damages than the cost of making the repairs, because the evidence does not show what the difference would be between the value of such an automobile as he bought and the one which he actually got after it was repaired.  This argument is astute, but it is not sound. There is evidence as to the value of the automobile which the plaintiff sold to the defendant had it been as warranted.  It is in evidence by the contract with the manufacturer that these cars sold in the market for fifteen hundred dollars.  It is also in evidence that the defendant paid fourteen hundred dollars for this particular car.  The price paid for an article, while not conclusive as to its value, is evidence thereof, and when it is the only evidence in the case will, of course, be sufficient upon which to base a verdict.  Sutherland on Damages, § 654; *Stevens* v. *Springer*, 23 Mo. App. 375; *Trustees of Howard College* v. *Turner*, 71 Ala. 429; *Luse* v. *Jones*, 39 N. J. Law 707; *White Automobile Co.* v. *Dorsey*, 119 Md. 251.  There is no controversy in this case as to the value of the car if it had been as warranted, and of its value as it was when delivered to the defendant, and the jury could not be allowed to disregard this evidence.  We are convinced that the obscurity of the language used in the instruction given by the court above referred to misled the jury on this question.  The only evidence of the value of the car delivered to the defendant is the evidence of the three witnesses who appraised it, and they fix its value at seven hundred dollars less such sum as it would take to put it in running order, which sum, as shown by the evidence, was something over two hundred dollars, so that it may be said that the automobile delivered to the defendant in July, 1914, was of the value approximately of five hundred dollars.  There is likewise no conflict in the evidence as to the value of the automobile had it been as warranted, that is, a merchantable automobile of

the kind sold. The only evidence upon this question is the price at which the plaintiff sold it to the defendant and the price at which automobiles of this character are sold by the manufacturer to the trade. In the absence of any other evidence this must be taken as a basis for the defendant's recovery. The automobile was sold to him for fourteen hundred dollars, which was one hundred dollars less than the ordinary sale price, as admitted by the plaintiff, because it was the first one sold in that neighborhood, and it was expected that it would lead to other sales. Assuming this to be the actual value of the automobile then it is clear that by the uncontradicted evidence the defendant was damaged at least to the extent of nine hundred dollars, by reason of the plaintiff's failure to furnish him a merchantable automobile of the kind that he sold, regardless of whether or not there was an express warranty that it should be of any particular quality.

The action of the court in refusing to give a number of instructions offered by the defendant is assigned as error. It would serve no useful purpose to take these instructions up and discuss them in detail. What we have said sufficiently indicates the proper rule to be followed in determining the rights of the parties in this case, and will afford a sufficient guide to the lower court upon a retrial thereof.

We reverse the judgment of the circuit court complained of, set aside the verdict of the jury, and remand the cause for a new trial.

*Reversed and remanded.*