# Richmond

J. A. SILVEY, trading as SILVEY MOTOR SALES v. J. C. JOHNSTON.

April 21, 1952.

Record No. 3902.

Present, All the Justices.

The opinion states the case.

*William R. L. Craft, Jr.* and *I. Leake Wornom, Jr.,* for the plaintiff in error.

*J. Livingstone Dillow,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

This is an action brought by J. A. Silvey, trading as Silvey Motor Sales, herein called plaintiff, against J. C. Johnston, herein called defendant for damages allegedly caused by breach of warranty of title to an automobile sold or traded to Silvey by Johnston.

Upon issue put to the jury, plaintiff was cast and judgment entered accordingly. We granted writ of error.

Plaintiff is engaged in buying and selling automobiles, and for that purpose operates a place of business under the name of Silvey Motor Sales, Blacksburg, Virginia.

By written contract dated July 11, 1949, he sold to defendant a Chevrolet automobile. The consideration stated in the contract that plaintiff was to receive "$650.00 and a trade-in of" an automobile owned by defendant described as "one 1947 4 dr. Plymouth, Motor number P15-291796." This motor number as written in the contract, was obtained from the engine of the car.

The undertaking of each party is thus stated in the instrument:

"Mr. Johnston guarantees SILVEY MOTOR SALES a clear title to the Plymouth mentioned above. SILVEY MOTOR SALES guarantees a clear title to the above Chevrolet as soon as the title has been received from the Division of Motor Vehicles, which will be sent to Mr. Johnston."

By legislative enactment, in Virginia, title to a motor vehicle, except as otherwise provided, is required to be registered with the Division of Motor Vehicles before it may be operated "upon any highway in this state." Code 1950, section 46-42. Upon registration a certificate evidencing title is issued to the owner. Transfer of a marketable title to the vehicle can only be accomplished by compliance with the formalities imposed, one of which is that the motor number be recited upon the certificate of title. Code 1950, sections 46-79, 46-84, 46-85. *Thomas* v. *Mullins*, 153 Va. 383, 149 S. E. 494. That necessarily contemplates and requires that the motor number on the engine correspond with that appearing on the certificate of title.

Uncontradicted evidence establishes the following facts:

The $650 was paid by Johnston to Silvey and each delivered his automobile to the other. Good title to the Chevrolet was promptly given by plaintiff to defendant. On July 19, 1949,

plaintiff took the Plymouth automobile to Danville, Va., to a used car sale and there secured an offer of $1430 for it, which he accepted. However, when he there undertook to deliver the car to the purchaser, the sale could not be consummated. It was then discovered for the first time that the motor number obtained from the engine and appearing in the written contract did not correspond with the engine number upon the certificate of title that had been furnished plaintiff by defendant. Two or three digits on the engine and recited in the contract did not correspond with those stated in the certificate of title as registered with the Division of Motor Vehicles. Due to this discrepancy and defect in the title, the Danville purchaser refused to accept the car, and it had to be brought back to Blacksburg. The offer of the would-be purchaser and other evidence tended to establish that the value of the car was $1430 to $1445 when sold to plaintiff by defendant.

There is no express statement in evidence that defendant knew that plaintiff purchased the Plymouth for resale, yet defendant was aware that plaintiff was engaged in the business of buying and selling automobiles and that is sufficient to impute to him knowledge that the car was acquired for resale. 46 Am. Jur., Sales, sec. 699, p. 824.

Upon discovery of the difference between the digits of the actual engine number and those under which the car was registered, plaintiff contacted defendant and demanded that he clear up the defect in the title so that the car might be disposed of. Defendant did not know of the defect when he sold the Plymouth and though he communicated with the party from whom he purchased the car concerning the trouble, the evidence discloses that no real effort was made by him to secure a marketable title for plaintiff. He finally declined to concern himself further and dropped the matter.

When convinced that defendant would do nothing toward securing him a good title, plaintiff undertook to correct the defect himself and obtain a proper certificate. He employed an attorney to assist him, and after several months their efforts were successful and a good title was obtained early in March, 1950. The car was then sold on March 14, 1950, by plaintiff for $975, which sum he testified was its then value.

Both parties to the contract were aware of the fact that the legislative requirements had to be observed to furnish good title to their respective automobiles. That they so understood and

intended is stated with sufficient clarity and certainty in their contract. About that there can be no cavil, for on cross-examination defendant said:—''We agreed to furnish each other a clear title.''

Plaintiff's chief assignments of error are that the evidence conclusively establishes his right to recover and that the court should have sustained his motion to submit to the jury the issue of damages only, but having refused to do so, the court should have set aside the verdict, entered judgment for him on the issue of liability and awarded a new trial to determine the quantum of damages.

He also complains of the court's, (a) refusal to admit certain exhibits in evidence which were offered on the issue of damages, and (b) refusal to give Instruction No. 3 pertaining to damages.

Defendant obligated himself to give good title to the automobile but that was not done. The evidence is conclusive that some damage ensued as a direct result of his breach of warranty, yet the jury found for defendant.

''* * * where testimony is uncontradicted there must be something to justify the jury in discrediting it.'' *Messer* v. *Commonwealth,* 145 Va. 838, 845, 133 S. E. 761.

''The uncontradicted evidence of a witness cannot be disregarded by either the jury or by the court if it is not inherently improbable.'' *Worsham* v. *Commonwealth,* 184 Va. 192, 194, 34 S. E. (2d) 234.

''The power and duty of this court to set aside a verdict and judgment unsupported by evidence is now too well established to merit discussion.

''While the jury is the judge of the weight of the testimony and the credibility of the witnesses, it cannot arbitrarily disregard the uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with other facts and circumstances appearing in the record, even though such witnesses are interested in the results of the litigation.'' *Epperson & Carter* v. *DeJarnette,* 164 Va. 482, 485, 180 S. E. 412.

''* * * this court has always exercised the power and the duty, when not hampered by statute, of setting aside a judgment that was plainly wrong or without evidence to support it.'' *Norfolk, etc., R. Co.* v. *Thayer Co.,* 137 Va. 294, 298, 119 S. E. 107.

"While we are not unmindful of the weight which attaches to the verdict of a jury when the verdict has been approved by the trial court, it is the imperative function of this court to set aside the verdict of the jury, even though approved by the trial court, when the evidence does not warrant the finding of the jury." *Garrison* v. *Burns,* 178 Va. 1, 8, 16 S. E. (2d) 306.

■ Nor is defendant exonerated from liability on his warranty because he did not know of the defect in the title.

■ The verdict denying any recovery is without evidence to support it. That verdict and the judgment entered thereon must be vacated and judgment entered here for plaintiff on the issue of liability.

■ The evidence is, however, inconclusive as to the quantum of damages. Whether or not plaintiff exercised his best efforts to secure the most advantageous price that he could obtain when he sold the car and thus minimize the damage, is not conclusively shown. There is also evidence tending to establish additional items of damage and expense alleged to have been incurred. That these items of damage, expense and cost were sustained, and if so, whether or not certain of the sums asserted are reasonable, is not conclusively proved. Just what was and is the true over-all damage justly chargeable to defendant because of his breach of warranty was and is a question to be determined by a jury.

■ In attempting to prove part of the damages claimed to have been sustained, plaintiff testified to an offer of $1430 he received for the car in Danville in July, 1949. He then undertook to prove what it sold for on March 14, 1950, and so to establish its worth as of that date and thus show the damage that he had sustained by the delay in obtaining good title, he offered in evidence a copy of the contract of sale of March 14, 1950. The court rejected this contract but did let him testify as to what was the sale price and to whom the car was sold on that date. When this instrument of March 14, 1950, was offered in evidence and rejected, it was not actually filed as an exhibit by plaintiff and made a part of the record as it should have been. Rules of Court 5:1, § 3(c). It is not now before us for inspection. Yet it is sufficiently described for us to know that it represents what the car was actually sold for by a dealer in the ordinary course of business. It was admissible as tending to prove the then value of the automobile and to establish the amount of damage caused by the delay incident to obtaining a good title. *Rich-*

*mond Leather Mfg. Co.* v. *Fawcett,* 130 Va. 484, 107 S. E. 800; *Gorby* v. *Bridgeman,* 83 W. Va. 727, 99 S. E. 88.

To prove the market value of the Plymouth automobile as of July 11, 1949, plaintiff was asked the following question and gave the partial answer as quoted below:

"Q. Mr. Silvey, I had asked you the fair market value of that Plymouth automobile that you acquired from Johnston on July 11, 1949.

"A. The only thing we go by—all the dealers establish figures from the N. A. D. A. Book put out by the—"

Before the answer had been concluded, defendant objected "to the use of N. A. D. A. Book" to establish the value of the car. The objection was sustained and plaintiff excepted.

No explanation is made of what the letters N. A. D. A. stand for but we take it that they represent an abbreviation of "National Automobile Dealers Association" Guide Book. No effort, however, was made to *file* this book as an exhibit, nor was any evidence offered to show that it is used by dealers as a standard guide for automobile prices. It does not appear from the record what plaintiff's full answer would have been, nor is it anywhere indicated what was the value given in the N. A. D. A. Guide Book for this make and model car.

█ Plaintiff did not adequately or sufficiently develop the evidence, the rejection of which he has attempted to assign as error. As the record now stands, this specific objection and exception has not been properly presented and cannot be considered by us.

Plaintiff complains of the refusal of the following instruction (No. 3) dealing with the character and measure of proof necessary to establish damages.

· "The Court instructs the Jury that proof of absolute certainty as to the amount of loss or damages is not essential when the existence of loss is established, and the facts and circumstances proven are such as to permit of intelligent and probable estimate of the amount of damages or loss sustained."

█ Though the phraseology used could be improved, plaintiff was entitled upon the facts and circumstances in evidence to an instruction embodying the principle stated. *Wyckoff Pipe & Creosoting Co.* v. *Saunders,* 175 Va. 512, 518, 9 S. E. (2d) 318; *Greenland Develop. Corp.* v. *Allied Heating Products Co.,* 184 Va. 588, 600, 35 S. E. (2d) 801, 164 A. L. R. 1312; *E. I. duPont*

*deNemours & Co.* v. *Universal Moulded Products Corp.,* 191 Va. 525, 572, 62 S. E. (2d) 233.

If the evidence in regard to damages is the same at the next trial, the following instruction, or one of similar import, should be given if asked for:

"The court tells you that in this case the plaintiff has established his right to recover,—that is, he has proved that the defendant failed to perform his agreement. Therefore, if the facts and circumstances in evidence are such as to permit an intelligent and reasonably correct estimate of the amount of damages or loss incurred as a direct consequence of defendant's failure to furnish a good title, then the requirements of proof in that respect have been met, and you should find in favor of plaintiff for all items of damage and loss, if any, thus shown to have been sustained."

The judgment is reversed and final judgment will be entered here in favor of plaintiff on the issue of liability and the case remanded for a new trial, to be limited to the question of the amount of damages sustained by plaintiff.

*Reversed and remanded.*