In the Matter of Raymond Earl LAW-
SON, Bankrupt.

No. 2740.

United States District Court
W. D. Virginia,
Roanoke Division.

Jan. 20, 1962.

Dale Myers, Roanoke, Va., for bankrupt.

Thomas C. Phillips, Jr., Dodson, Pence & Coulter, Roanoke, Va., for petitioning creditors.

Ralph A. Glasgow, Roanoke, Va., for Daniel B. Ratcliff.

John H. Kennett, Jr., Roanoke, Va., for Millard A. Dillard.

MICHIE, District Judge.

The issue in this matter is whether a certain Salem Boat with a 30 H/P Mercury Motor and a homemade trailer, Virginia Certificate of Title No. 1282458, used for carrying the boat at the rear of an automobile, properly belong to the Trustee in Bankruptcy or to one M. A. Dillard or jointly to the bankrupt's general estate and one Daniel B. Ratcliff, but subject to an indebtedness of Ratcliff to Auto Finance Co., Inc. of Virginia (hereinafter referred to as Auto Finance) in the sum of $600.00.

The Referee by order entered April 21, 1961 held that title to the boat, trailer and motor was vested in the Trustee. On April 27, 1961 Ratcliff filed with the District Court a petition for review of the order. On May 1, 1961 the attorney for Mr. Dillard conferred with the Referee and advised him that he would probably wish to file a petition for review but that his client was then out of town so he asked for an extension of time within which to file a petition for review. No written request for such an extension was filed. The request was granted by the Referee, also without any written order to that effect. A petition for review later was filed by Mr. Dillard's counsel within the time as so orally extended.

The first question that arises is whether this Dillard petition was timely filed and, if not, whether, in view of the timely filing of the Ratcliff petition, the Referee's order may now be modified in Dillard's favor if the Court feels that it should originally have been more favorable to Dillard.

It seems clear that the Dillard petition was not filed in time. § 39, sub. c of the Bankruptcy Act (11 U.S. C.A. § 67, sub. c) provides, as amended by P.L. 86–662, July 14, 1960:

"A person aggrieved by an order of a referee may, *within ten days after the entry thereof,* or within such extended time as the court *upon petition filed within such ten-day period* may for cause shown allow, file with the referee a petition for review of such order by a judge * * *." (Emphasis supplied.)

Even if we assume that the word "court" here includes the Referee (See § 1(7) of the Bankruptcy Act, 11 U.S.C.A. § 1(7)) it is clear that no such petition was filed on behalf of Dillard in this case. One cannot "file" an oral request. Only something tangible, usually a paper, can be filed.

However, it does not necessarily follow that because Mr. Dillard's counsel did not file a timely petition for review he cannot now be heard and errors against his client found to exist in the order be corrected. Mr. Ratcliff's petition timely filed brought up for review under the phrase of the act above quoted the "order of a referee", not just a part thereof. And there appears to be no

provision in the act for bringing up a portion of an order for review.

While not directly in point the following quotation from Remington on Bankruptcy, 6th Ed., in § 3414 (Vol. 8, p. 310) seems pertinent:

"The judge is not actually confined to the record before the referee, or the points raised before the referee, if he decides to review further or go into the matter on his own initiative, although many decisions contain statements apparently to the contrary. The latter represent instances where the judge is declining to go outside the record or into matters not presented to the referee, because, though he has the power, he is not required to exercise it."

I will therefore consider the entire order and any errors that I feel may have occurred therein, regardless of whom such errors may affect.

■ As the evidence taken by the Referee on a recording device was found to be not capable of transcription the Referee had to rely very largely on his memory for his statement of the facts and counsel for Mr. Dillard moved that the Court take further evidence. The Court was not satisfied that all of the relevant facts were contained in the statement and granted the motion. The Court has therefore had the advantage of hearing in person Mr. Ratcliff, Mr. Dillard, Mr. Ferguson through whom Mr. Dillard's claim arises and others. Unfortunately the bankrupt could no longer be found.

It appears that some time before the bankruptcy Mr. Ferguson, who had had some previous transactions with Mr. Lawson, the bankrupt, lent Mr. Lawson $3,500.00 which Mr. Ferguson himself borrowed from Mr. Dillard. From time to time payments aggregating $1,000.00 were made by Mr. Lawson which were in turn turned over to Mr. Dillard and reduced the indebtedness of Mr. Lawson to Mr. Ferguson and of Mr. Ferguson in turn to Mr. Dillard to $2,500.00.

During this period, or at least the latter part of it, the boat, motor and trailer in question were held for sale by Mr. Lawson in his motor sales business which he conducted under the name of Northwest Motors. Mr. Ratcliff was then an employee of Auto Finance, an automobile financing house with which Mr. Lawson did business, and Mr. Ratcliff had become acquainted with Mr. Lawson. On Labor Day, 1960, Mr. Lawson lent to Mr. Ratcliff the boat, motor and trailer and Mr. Ratcliff used them over the weekend.

Shortly thereafter the boat, motor and trailer came into the possession of Mr. Ferguson and/or Mr. Dillard—and how they so came is the central controverted question of fact to be decided in this case. Mr. Ferguson and Mr. Dillard testified that they became alarmed about Mr. Lawson's financial condition and agreed with him that Mr. Ferguson would buy the articles from Mr. Lawson by giving Mr. Lawson a credit of $1,000.00 on his indebtedness to Mr. Ferguson; and Mr. Dillard agreed to take the articles over from Mr. Ferguson by giving Mr. Ferguson a credit of a like amount on Mr. Ferguson's indebtedness to him. On the other hand the bankrupt testified on his original examination that he had merely lent the articles to Mr. Ferguson and this is the position pressed by the Trustee for the bankrupt and Mr. Ratcliff.

Mr. Ferguson and Mr. Dillard testified that Mr. Lawson promised to assign to one of them the certificate of title to the trailer, which is required for a trailer under the laws of Virginia just as it is for an automobile (none was required for the boat or motor), and that they kept asking him for it and he continued to promise delivery of it but never did so.

In the meantime Mr. Dillard had some repairs made upon the motor and trailer. A duplicate repair bill dated September 17, 1960 is in evidence. The equipment was also for a time put up for sale in an automobile sales establishment owned by Mr. Dillard.

In the meantime Mr. Lawson and Mr. Ratcliff entered into an agreement described by Mr. Ratcliff's counsel as follows:

"Bankrupt contacted Mr. Daniel B. Ratcliffe, an employee of Auto Finance Corporation and made an agreement with Mr. Ratcliffe, that if Mr. Ratcliffe would execute note at Auto Finance Corporation, for Mr. Ratcliffe to pay debt against boat in monthly installments; that he and Mr. Ratcliffe would own boat jointly subject to $600.00 debt Mr. Ratcliffe agreed to pay; that they would use boat together and if boat was ever sold, Mr. Ratcliffe was to be repaid said $600.00 and any profit made on boat was to be divided equally."

The conditional sales agreement with Auto Finance covering "Salem Boat & Trailer 30 H/P Mercury Motor" by which the $600.00 was borrowed by Mr. Ratcliff appears in the record and is dated September 22, 1960—five days after the date of the repair bill rendered to Mr. Dillard, showing that the property was in Mr. Dillard's possession when this money was borrowed. The conditional sales agreement was never recorded. The certificate of title to the trailer had originally stood in the name of one Cook, who evidently endorsed it in blank when he transferred the property to Lawson, and, presumably, this certificate of title was given to Auto Finance with the conditional sales contract. Some time later, however, on November 15, 1960 Ratcliff, who was an employee of Auto Finance, took the Cook title, had it transferred to his own name and endorsed it to and, presumably, delivered it to Auto Finance.

On this state of facts we must first determine whether or not Mr. Ferguson bought these articles from Mr. Lawson, giving him a credit on Lawson's indebtedness to him, and, if so, whether he got a good title to the articles or any of them. The argument to the effect that the articles were merely lent to Ferguson and Dillard is well summarized by the Referee in the order under review as follows:

"* * * No written record of any kind was made or entered into between Lawson and the said Ferguson and Dillard, nor was any entry made upon any of the records of the said Ferguson or Dillard. The record of other credits made by Mr. Ferguson on the check heretofore mentioned did not disclose any credit for the transfer of said articles. Again, when the involuntary petition in bankruptcy was filed, the debt of $2500.00 was alleged by the said Ferguson to be due him from the bankrupt. There is no question but that they desired whatever security that they could obtain for the payment of the obligations due them, which is no more than natural. Nevertheless, the bankrupt testified that he loaned the boat to the said Ferguson and Dillard, and that there was no agreement entered into between them for the transfer of the title of any of the said three articles. * * *"

Nevertheless Ferguson and Dillard have good answers to each of the points made by the Referee. The lack of any written record does not seem determinative in a transaction of this kind where manual delivery of the property was given. It is true that it would have been better practice to have noted the credit, as previous credits paid by check had been noted, on the back of the cancelled check representing the original loan but in this type of transaction, outside the regular course of business, no very conclusive effect can be given to such failure.

The fact that Ferguson signed the bankruptcy petition which alleged an indebtedness of the bankrupt to him of $2,500.00 was explained by Mr. Ferguson by his testimony that he never read the petition—which is certainly not unusual in such cases. And the petition was prepared by counsel other than counsel who now represent Mr. Ferguson and who presumably were primarily employed by other creditors. And the bankrupt's testimony that he lent the boat to Ferguson may be explained by the fact that, as stated in one of the briefs of counsel, he did so after first testifying that he had sold the boat to Ratcliff. A bank-

rupt, under pressure on examination and perhaps not too careful with the truth under the best of circumstances, might well·feel that he was on safer ground in committing perjury on a point on which he might not readily be checked rather than to admit publicly that he had sold the same article to two different purchasers—one by delivery of the article and one by delivery of the certificate of title endorsed in blank.

The suspicions naturally aroused by the foregoing arguments, which the Referee deemed conclusive, would appear conclusive to me were it not for two facts. The first is that there is no evidence whatsoever that Ferguson or Dillard ever used the articles and they both testified under oath flatly that they did not. At the first argument on this matter, before I took additional testimony, counsel for Mr. Ratcliff was under the impression that Ferguson and Dillard had used the boat. But when the additional testimony was taken he produced no testimony to that effect and did not seriously cross-examine Ferguson and Dillard on their denials.

If Ferguson and Dillard did not take the equipment to use, what possibly could have been the reason for Lawson giving it to them other than as a payment on his indebtedness to Ferguson or as security therefor? There is no evidence that the articles were given as security but if they were the.transaction would have constituted a perfectly valid pledge and the result in this case would be the same whether Ferguson held such a valid lien or had bought the articles by giving Lawson a credit on his indebtedness to Ferguson.

The second factor that convinces me that the transaction constituted a sale is that I had the advantage of hearing both Ferguson and Dillard testify and was impressed with their sincerity and frankness, though Mr. Dillard was apparently, in an earlier stage of the proceedings, somewhat evasive as to the whereabouts of the articles, an issue which has no bearing on that here involved and with respect to which such evasiveness was perhaps understandable in view of the fact that he was claiming title to the trailer without having the certificate of title.

I come down to the conclusion that the transaction was intended as a sale and that it operated as such as to the boat and motor. However the trailer stands on a somewhat different basis. Virginia law requires a certificate of title for a trailer just as it does for an automobile. Va.Code, § 46.1–41. The Virginia Supreme Court of Appeals has several times held that title to a motor vehicle can be transferred only by transferring the certificate of title. Thomas v. Mullins, 153 Va. 383, 149 S.E. 494; Sauls v. Thomas Andrews and Co., 163 Va. 407, 175 S.E. 760; Silvey v. Johnston, 193 Va. 677, 70 S.E.2d 280. It follows therefore that the sale of the trailer which Mr. Lawson purported to make to Mr. Ferguson did not operate to transfer title to Mr. Ferguson and that Mr. Lawson was therefore entitled to a credit on the indebtedness to Mr. Ferguson of only that portion of the agreed $1,000.00 which was represented by the value of the boat and motor.

Having concluded that the trailer did not pass to Mr. Ferguson the question then arises as to whether Mr. Ratcliff acquired an interest in it under his transaction with Mr. Lawson and whether Auto Finance has a valid lien on it. The question here arises as to whether, if one cannot make a valid sale of a motor vehicle by delivery of the vehicle without the certificate of title, one can make a valid sale of a motor vehicle by delivering the certificate of title endorsed in blank without delivery of possession of the vehicle.

In 5–A Am.Jur. p. 339 it is stated:

"In a majority of the cases in which the issue of estoppel has been raised, the 'innocent purchaser' has relied upon possession of the title documents in addition to possession of the vehicle itself; generally possession of such documents alone is insufficient indicia of ownership to justify reliance."

As authority for this position 18 A.L. R.2d p. 818 is cited. All but one of the cases there cited appear to turn upon express statutory provisions for which we have no equivalent in Virginia. In the other case, Erie County United Bank v. Fowl, 71 Ohio App. 220, 49 N.E.2d 61, the defendant Fowl purchased an automobile from a dealer and was given possession of the car with the promise that a certificate of title would be delivered shortly. The dealer obtained the manufacturer's certificate of title but did not deliver it to Fowl. He transferred it for a new title in his own name and then induced Fowl to sign an application for transfer of the title to Fowl, forged Fowl's signature to a note and chattel mortgage and took the papers to the plaintiff bank which gave the dealer credit for the proceeds of the forged note. The procedure followed was the normal procedure where a car was purchased on a deferred payment basis, except of course for the fact that this car was not so purchased and that Fowl's signature to the note and chattel mortgage were forged. Later the dealer disappeared and the bank instituted a replevin suit to recover the car from Fowl. The court held for Fowl saying:

> "The mere possession of a certificate of title to an automobile does not, in and of itself, give one the right to the car described thereon. If it were not so the possession of a stolen certificate plus a forged application would give the thief the right of possession, when a certificate, predicated on such forgery, had been issued."

That case is somewhat similar to the present case but it seems to me impliedly to hold that one can acquire a good title to a car by possession only without a certificate of title and the three Virginia cases above cited hold the contrary. I therefore do not believe that the Fowl case would be followed in Virginia and it seems to me that if Ferguson did not get a good title to the trailer Ratcliff must have done so as to his purported one-half interest therein, subject to the debt to the Auto Finance Corp., the claim of which would of course stand on the same basis as Ratcliff's.

I therefore believe Dillard is entitled to the boat and motor and that Ratcliff and the Trustee in Bankruptcy each own a one-half interest in the trailer subject to the lien of Auto Finance.

Perhaps this decision bears some resemblance to the judgment of Solomon in deciding to cut in half the baby which was claimed by two women both asserting it was theirs. It is quite possible that the three articles in question should bring the best price by being sold together. Perhaps the parties can agree as to the relative values of the trailer on the one hand and the boat and motor on the other and can agree to have the Trustee in Bankruptcy sell the whole lot at one time with the understanding that the proceeds would be divided in proportion to the respective values so agreed on.

An order will be entered remanding the case to the Referee for further proceedings in accordance with this opinion.