# Staunton.

## S. G. Thomas v. Minnie Mullins.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*O. M. Vicars*, for the plaintiff in error.

*Morton & Parker*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

Plaintiff in error (defendant in the trial court) is here complaining of a judgment in the principal sum of $1,325.00 rendered against him in favor of Minnie Mullins (hereinafter called plaintiff), in the Circuit Court of Wise county.

On the 19th day of July, 1927, plaintiff sold to the

defendant certain real estate in consideration of the sum of $3,000.00, the receipt of which is acknowledged in the deed of conveyance. As a part of the purchase price, defendant, who was an automobile dealer, was to deliver to plaintiff an automobile to be selected by plaintiff from a number of automobiles owned by defendant, at the stipulated price of $1,325.00. On August 17, 1927, defendant's garage and his stock of automobiles were destroyed by fire.

Three contentions are made by the plaintiff: (1) That she did not select an automobile pursuant to agreement; (2) that defendant did not deliver or offer to deliver an automobile to her; (3) that the contract of sale, in any event, was not executed, due to the failure of defendant to comply with the Virginia motor vehicle act regulating the sale of automobiles.

Defendant contends that there was an executed sale of a Wolverine car, selected by plaintiff and stored by direction of plaintiff in defendant's garage which was destroyed by fire.

Upon the conflicting evidence the jury were precluded from passing, as the trial court, after the introduction thereof upon motion of plaintiff, instructed the jury as follows:

"The court instructs the jury that, although you may believe from the evidence that S. G. Thomas agreed to sell and Minnie Mullins agreed to buy the Wolverine automobile in question at a price of $1,325.00, and that Minnie Mullins paid to S. G. Thomas the purchase price thereof by giving him credit for that amount on the purchase price of the real estate sold by her to him, yet, if you further believe from the evidence that no assignment of title to and notice of transfer of said automobile had been executed on the form prescribed by the Motor Vehicle Commissioner as provided by

statute and delivered by S. H. Thomas to Minnie Mullins at the time of the fire which destroyed said automobile, then the contract of sale was merely executory and not executed, and the title to the said automobile, at the time of the fire, had not passed to Minnie Mullins but remained in S. G. Thomas, and you must find for the plaintiff the sum of $1,325.00, with interest thereon from the 19th day of August, 1927.''

It is a conceded fact that no assignment of title to and notice of transfer of any automobile had been executed on the form prescribed by the Motor Vehicle Commissioner as provided by statute, and delivered by defendant to the plaintiff prior to the fire.

It is assigned as error that the court erred in giving to the jury the foregoing instruction. The correctness of this instruction depends upon a proper construction of the motor vehicle registration act, enacted by the legislature in 1926 (Acts 1926, chapter 149). The title of the act conforms to the constitutional requirements, and sets forth the purposes of the act, which are: "* * to continue the office of Motor Vehicle Commissioner; to provide for his election; to prescribe his powers and duties; to protect the title of motor vehicles; to provide for the registration of titles thereto and the issuance of certificates of titles; to prescribe the effect of such registration; to provide for the licensing of motor vehicles and chauffeurs; to provide penalties; and to repeal all acts and parts of acts in conflict therewith.''

The pertinent provisions of the act are as follows:

"The Motor Vehicle Commissioner is hereby authorized to adopt and enforce such administrative rules and regulations and to appoint such agencies as may be necessary to carry out the provisions of this act. He shall also provide suitable forms for applications,

certificates of titles and registration cards, license number plates and chauffeur's licenses and badges, and all other forms requisite for the purpose of this act.

"e.  Section 4.  *  *  *  The Motor Vehicle Commissioner shall, as of February first of each year, and as soon thereafter as possible, but in no case later than April first, certify from his records to the proper commissioner of the revenue the name and address of the owner of each motor vehicle in his city or county, and the name, model, type, horsepower and weight of each of the said motor vehicles.

"It shall be the duty of the commissioner of the revenue to assess for taxation as tangible personal property as now required by law, each motor vehicle shown by the statement certified to him as aforesaid and liable for taxation as tangible personal property."

"t.  Section 19.  Manufacturer or dealer to give notice of sale and transfer.

"Every manufacturer or dealer upon transferring a motor vehicle, trailer or semi-trailer, whether by sale, lease or otherwise, to any person other than a manufacturer or dealer, shall immediately give notice of such transfer to the department upon the official form provided by the department.  Every such notice shall contain the date of such transfer, the names and addresses of the transferer and transferee and such description of the vehicle as may be called for in the official form."

"(39)  j.  Section 8.  An owner shall make application upon appropriate forms furnished by the department for registration, also for certificate of title.  Said certificate shall be good for the life of the car so long as the same is held or owned by the original owner of such certificate and need not be renewed annually. *  *  *."

"k. Section 10. The department shall file each application received, and when satisfied as to the genuineness and regularity thereof, and the applicant is entitled thereto, shall register the vehicle described therein as the owner thereof in suitable books or on index cards as follows: * * *."

"Section 11. Registration cards and certificates of title.—(a) The department upon registering a vehicle and receiving an application for a certificate of title therefor shall issue to the owner a registration card and a certificate of title therefor as separate documents. * * *.

"(e) The certificate of title shall contain a statement of the owner's title and of all liens or encumbrances * * *. The certificate of title shall also contain upon the reverse side forms of assignment of title or interest * * *.

"Section 37. Penalty for misdemeanor.—(a) It shall be unlawful and constitute a misdemeanor for any person to violate any of the provisions of this act unless such violation is by this act or other law of this State declared to be a felony."

██ In construing a statute it is the primary endeavor of the courts to ascertain and give effect to the intention of the legislature. *London Bros.* v. *National Exch. Bank*, 121 Va. 460; 93 S. E. 699. The statute under consideration, while providing incidentally for the payment of certain fees, is not primarily a revenue raising measure. As interpreted and construed by the legislature, its general purpose is to make uniform the law of this State in so far as it affects the regulation of motor vehicles; the issuance of certificates of title to prevent larceny thereof; to define the duties of the commissioner; and to provide penalties for its infraction. Acts 1926, page 277, chapter 149.

■ In view of the mandatory requirements of the statute that the licensed dealer in automobiles must give immediate notice of the transfer or sale of an automobile to the Motor Vehicle Commissioner; that the purchaser or owner must make proper application upon the form furnished by the department; that the department, when satisfied of the regularity of the transfer, must register such automobile and the name of the owner thereof in a suitable book; and must issue to the owner thereof a certificate of title, we are of opinion that unless these requirements are fully complied with, the delinquent party does not fall within the beneficial provisions of the statute. A non-compliance with the statute subjects the seller to fine and imprisonment and defeats the recovery based upon a contract obnoxious to the statutory requirements. The imposition of the penalty is to protect the public against fraud and to compel the proper registration of titles.

In *Ohio Farmers' Insurance Co.* v. *Todino*, 111 Ohio St. 274, 145 N. E. 25, 26, 38 A. L. R. 1118, it is said: "A distinction has been recognized between statutes designed for the protection of the public and those designed primarily for the raising of revenue. The courts are in accord that where a statute is enacted to protect the public against fraud or imposition, or to safeguard the public health or morals, a contract in violation thereof is void, even though a money penalty also is exacted."

In *Stein* v. *Scarpa*, 96 N. J. L. 86, 114 Atl. 245, it is held that where the seller of an automobile fails to comply with a statute regulating the sale thereof, the purchaser may rescind the sale upon returning the automobile, and recover the purchase money.

In *Foster* v. *Beall* (Tex. Civ. App.), 242 S. W. 1117,

1118, construing a statute regulating the transfer of title relating to automobiles, the court said: "The statute * * * was enacted not simply for the purpose of regulating the transfer of title to personal property, but as a method of suppressing automobile thefts. Compliance with the law is not a formality which the parties may waive. The general public has an interest in its observance. When the appellee sold and delivered the car to the appellant without executing and delivering the necessary papers, he committed a penal offense, punishable by a fine. He knowingly did that which the law said he should not do. His alleged good intentions did not excuse him. He is charged with a knowledge of those legal requirements, and he knew that he had not performed them. He made no attempt to perform them till after this suit was filed, and after the sale had been repudiated by the purchaser. The law is mandatory, and cannot be evaded by innocent neglect."

It is also to be observed that under the provisions of section 4, *supra*, an automobile is not generally subject to taxation like other tangible personal property, but is assessable for taxation by the commissioner of the revenue when he receives, not later than April first, a certificate from the Motor Vehicle Commissioner stating the name and address of the owner, and the name, model, type, horsepower and weight of the automobile. If, after the seller, as required by law, has furnished the purchaser with an assignment of title, and the purchaser fails to make application for a certificate of title to the commissioner, he is amenable to a fine or imprisonment. Of course, it follows that if the seller has failed to deliver to the purchaser the written assignment of title required by the statute, it will be impossible for the purchaser to report such

purchase to the Motor Vehicle Commissioner, and hence the commissioner of the revenue may be deprived of an opportunity to assess the automobile for the purposes of taxation. In order to complete the sale upon his part, it is essential that the seller conform to the statutory requirement by delivering to the buyer a proper assignment of title.

■ The statute is essentially a police regulation, enacted primarily for the protection of the public and its provisions are mandatory in their terms.

We are of opinion, therefore, to affirm the judgment of the trial court.

*Affirmed.*