### The TRAVELERS INDEMNITY COMPANY

v.

### NATIONWIDE MUTUAL INSURANCE COMPANY and Nina S. Powell, Executrix of the Estate of Robert J. Powell, deceased.

#### Civ. A. No. 1291.

United States District Court
W. D. Virginia,
Roanoke Division.

March 21, 1964.

Carroll D. Rea, Roanoke, Va., for Travelers Indemnity Co.

William B. Poff, Roanoke, Va., for Nationwide Mut. Ins. Co.

Tom Stockton Fox, Roanoke, Va., for Nina S. Powell.

DALTON, Chief Judge.

At approximately 7:30 P.M. on the evening of October 3, 1962, Mr. Shirley D. Crowder, accompanied by his wife, arrived in his 1962 Corvair automobile at the place of business of Scott-Powell Motor Company, a partnership operated by Robert J. Powell and Thomas A. Scott, Jr., with the intention of selling his automobile to that concern. Prior to that time Crowder had negotiated with Scott-Powell Motor Co. about the terms of the sale, and he carried his Virginia certificate of title with him so that the sale could be consummated that evening. Robert J. Powell met them in the company's office, and a final agreement regarding the sale was made. Powell wrote and delivered a check to Crowder in the amount of $1800.00, and Crowder signed his name on the back of his title certificate as assignor, with Scott-Powell Motor Co. designated as assignee, and delivered the title certificate to Powell. Powell told Crowder that he was a notary public and that he could take Crowder's acknowledgment of his signature. Counsel for Travelers argues that Crowder did not actually acknowledge his signature, but his deposition testimony on that point [1] when coupled with Powell's hand-

---

1. "Q. After signing the certificate of title to the car, did you acknowledge your signature thereto before a person authorized to administer oaths? A. Yes. Be-

written notations on the certificate [2] indicate so convincingly that he did acknowledge that I must conclude that there is no genuine issue of fact on this issue, and this Court so finds, concluding that Crowder did indeed acknowledge his signature before Powell, who was a notary public. However, for some reason which will never be explained, Powell failed to sign his name on the title certificate as the notary public before whom the acknowledgment was made.

Having concluded the transaction, Crowder and Powell looked about for a screwdriver to take the tags off the 1962 Corvair but none was readily available, and because it was also raining Powell stated that he would take the tags off in the morning and save them for Crowder, who intended to get a refund for them from the State. Crowder testified that he "didn't dream he (Powell) was going to take the car out with (Crowder's) * * * tags on it." But shortly after Crowder left, presumably on foot, Powell did take the Corvair out and was killed in a collision with one Paul Junior Saunders, an uninsured motorist.

Crowder called his insurance agent upon his arrival at home and cancelled his liability insurance contract. But it is impossible to prove that this call preceded the accident.

Crowder was insured by Nationwide Mutual Insurance Company under a conventional liability policy which carried the Virginia Uninsured Motorist Endorsement entitled Family Protection Against Uninsured Motorists. Scott-Powell Motor Company carried a garage policy with The Travelers Indemnity Company. This policy also included a Virginia Uninsured Motorist Endorsement applicable on a "Specified Car Basis".

Nina S. Powell, Executrix of the Estate of Robert J. Powell, threatened to bring suit against Saunders, the uninsured motorist, and Travelers instituted this declaratory judgment action against Nationwide and Nina Powell to have the responsibilities of the two companies adjudicated with regard to the imminent wrongful death action by Nina Powell. Although the complaint alleges that Nationwide is totally responsible for defending Saunders and paying any judgment rendered against him because title to the 1962 Corvair had not passed to Scott-Powell for insurable interest purposes, Travelers now admits that regardless of whether title to the automobile passed or not its policy offers uninsured motorist coverage.[3]

Nationwide's Uninsured Motorist Endorsement provides that "The unqualified word 'Insured' means * * * (2) any other person while occupying an insured automobile" and that "The term 'insured automobile' means: (1) an automobile which is registered in Virginia *which is owned by the Named Insured* or by his spouse if resident in the same

---

cause he said he was a bonded dealer, and he was a notary I believe at the time, I believe that's what he said. And if I'm not mistaken he wrote something down on there, and I didn't know whether he ever signed it or not; I couldn't tell you. Q. Did you tell Mr. Powell that that was your signature? A. No, because he saw me write it; I didn't tell him. Q. In other words, if I understand you correctly, he simply saw you, but that you did nothing else by way of acknowledgment of it to him? A. No. When he saw me write it down, I couldn't see but what he couldn't see, I'll put it that way." (Crowder Deposition, p. 5)

2. Powell filled in in his own handwriting the date of the purchase as "10-3 '62", that the method of payment was "Cash", that the amount of lien was "None", that all answers were supplied and completely subscribed and sworn to before me this "3" day of "Oct" 19"62" My Com. expires "2-11-63".

3. Counsel for Travelers at p. 3 of his Memorandum of Argument and Authorities states:

"Travelers admits that its insurance policy affords partial coverage for damages arising from Powell's death, but contends that Nationwide's insurance policy also affords like coverage * * *"

household; * * * " provided the automobile is being "used by or with permission of the Named Insured or his spouse if a resident in the same household." (Emphasis added) Thus, whether Nationwide offers coverage is directly dependent on whether Crowder still owned the automobile at the time of the accident. Nationwide of course maintains that he did not, while Travelers vigorously contends that because of Crowder's failure to comply with the provisions of Virginia's Motor Vehicle Act, particularly Va.Code Ann. § 46.1–87[4], no title to the 1962 Corvair passed to Scott-Powell, that Powell was driving with Crowder's permission, and hence Nationwide's coverage is applicable and to be prorated with Travelers.[5]

The questions involved in the case are five in number:

(1) Regardless of the status of legal title, was Powell using the automobile with Crowder's permission within the meaning of Nationwide's policy?

(2) Under Virginia law is an acknowledgment by the assignor of his signature on an automobile title certificate properly delivered to the assignee required to transfer ownership as between the assignor and his assignee for the purposes of insurable interest?

Assuming the answer to question (2) is affirmative,

(3) Did Crowder actually acknowledge his signature before Powell?

(4) If Crowder did actually acknowledge his signature, does the absence of the notary's signature on the certificate of acknowledgment incorporated in the certificate of title form vitiate the acknowledgment for the purpose of passing title to the automobile between the parties?

(5) If the acknowledgment was otherwise sufficient to allow title to pass between the parties, did Powell's position as a partner in the buying firm make him incompetent to take Crowder's acknowledgment?

Question One: In order to grant permission to use an automobile within the meaning of an omnibus clause in an insurance policy, the named insured must have such relation to or control over the car that he has a right to give or withhold his permission to use it. Virginia Auto Mutual Insurance Co. v. Brillhart, 187 Va. 336, 46 S.E.2d 377 (1948); Nationwide Mutual Insurance Co. v. Cole, 203 Va. 337, 124 S.E.2d 203 (1962). In the present case Crowder had divested himself of all authority and control over the Corvair in the course of his transaction with Powell. At its conclusion he was impotent to either grant anyone permission to use the car in the first place or to prevent Powell from operating it by withdrawing his "permission". Therefore, I must conclude that Powell was not at the time of the accident operating the Corvair with permission of Crowder within the meaning of Nationwide's liability policy but was instead operating it upon his own authority exclusively, and entirely inde-

---

4. Va.Code Ann. § 46.1–87 How transferred.—

"The owner of a motor vehicle, trailer or semitrailer registered under the provisions of this chapter transferring or assigning his title or interest thereto shall endorse an assignment and warranty of title upon the reverse side of the certificate of title of the motor vehicle, trailer or semitrailer to the purchaser thereof, with a statement of all liens or encumbrances thereon, shall acknowledge his signature thereto before a person authorized to administer oaths and shall deliver the certificate to the purchaser or transferee at the

time of delivering the motor vehicle, trailer or semitrailer."

5. Travelers' policy states:
"6. *Other Insurance.* With respect to bodily injury to uninsured, if the insured has other similar insurance available to him against a loss covered by this endorsement, the company shall not be liable under this endorsement for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss."
Nationwide's policy contains an identical provision.

pendently of Crowder's ability to allow or prevent such operation.

■ Question Two: There is no question that the Supreme Court of Appeals of Virginia has adopted a very strict attitude in construing Virginia's motor vehicle registration laws. Nationwide Ins. Co. v. Storm, 200 Va. 526, 106 S.E.2d 588 (1959); Sauls v. Thomas Andrews & Co., 163 Va. 407, 175 S.E. 760 (1934); Thomas v. Mullins, 153 Va. 383, 149 S.E. 494 (1929). This Court itself has given recognition to this attitude in the past United States Fidelity and Guaranty Co. v. Trusell et al., D.C., 208 F.Supp. 154, 159 (1962), as has the Fourth Circuit Court of Appeals. Eureka-Security Fire & Marine Ins. v. Maxwell, 276 F.2d 132 (4th Cir. 1960); Staunton Industrial Loan Corp. v. Wilson, 4 Cir., 190 F.2d 706 (1951). And it is this line of cases on which Travelers relies in arguing that absolute compliance with § 46.1–87 is required in order to relieve a seller of ownership of an automobile for any and all purposes. Or, to put the matter another way, Travelers argues that failure to absolutely comply with § 46.1–87 results in an absolutely void and ineffectual transaction. In light of our obligation under the Erie doctrine to follow state law as it is enunciated by the highest court of the state; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the argument is a strong one indeed.

However, the facts of our case go beyond anything the Virginia Supreme Court of Appeals has yet had to decide, and for that reason we feel justified in examining the rationale and scope of that Court's mandate regarding transfer of title under Virginia's Motor Vehicle Acts. In Nationwide v. Storm, supra, the Court was dealing with a complete failure to deliver the title certificate of an automobile in an attempted sale. In

that case the buyer was paying for the car in installments and operated it with the permission of the owner from the day of the first payment. The buyer made the final payment on a Saturday and both parties agreed to transfer the title certificate on the following Monday when they could go to the office of the Division of Motor Vehicles. The buyer had an accident on Sunday, and the Virginia Supreme Court of Appeals held that for insurance purposes, the seller was still the owner of the car.

Although the question of the requirement of delivery of an endorsed title certificate to effect a transfer of ownership for insurable interest purposes in Virginia is settled under Storm, it is interesting to note that in reaching their decision the Virginia court relied almost exclusively on the Ohio case of Garlick v. McFarland, 159 Ohio St. 539, 113 N.E.2d 92 (1953), saying simply that Ohio has a transfer statute "similar to ours. See Ohio General Code, § 6290–3." Nationwide v. Storm, supra, 200 Va. at 528, 106 S.E.2d 589. It is true that the facts in that case were strikingly similar to Storm's. It is also true that in many ways the Ohio statute and particularly that section (now Page's Ohio Revised Code § 4505.03) cited by the Virginia Court, is similar to Virginia's, but in one respect which is vitally relevant to the Storm holding the statutes are materially different. For while both Acts provide criminal penalties for non-compliance with their provisions (see Va. Code Ann. §§ 46.1–88 and 46.1–16; Page's Ohio Revised Code §§ 4505.18, 4505.19, 4505.99), only the Ohio Act has a statutory provision which specifically makes void and ineffectual any attempted transfer which does not comply with the Act. Page's Ohio Revised Code § 4505.-04.[6] Because of the harsh effect of this statute in forbidding all equitable con-

6. § 4505.04 has been amended slightly since the Garlick case (see 159 Ohio St. 544–545, 113 N.E.2d 95) and reads today as follows:

"*No person* acquiring a motor vehicle from the owner thereof, whether such

owner is a manufacturer, importer, dealer, or otherwise, *shall acquire any right, title, claim or interest* in or to said motor vehicle *until such person has had issued to him* a certificate of title to said motor vehicle, or delivered

siderations, including estoppel or waiver, (but see Mutual Finance Co. v. Municipal Employees Union Local No. 1099, 110 Ohio App. 341, 344, 165 N.E.2d 435 (1960) this statute has been called "an example of the most stringent certificate act," 36 Minn.L.Rev. 77, 80 (1951); and it is interesting to note that the Ohio courts have now overruled the purport of the Garlick case and hold that the transfer is ineffective until a new certificate of title is *issued* to the purchaser by the Ohio Division of Motor Vehicles, which is in perfect accord with that statutory language. Brewer v. DeCant, 167 Ohio St. 411, 149 N.E.2d 166 (1958); Ohio Farmers Ins. Co. v. Hoosier Casualty Co., 117 Ohio App. 507, 193 N.E.2d 153 (1963).[7]

The important point is that Virginia has no such voiding statute. And while it is true that generally illegal contracts or sales are void and unenforceable, a majority of courts which, like Virginia, have only the misdemeanor penalty and no statute expressly voiding an automobile transfer for non-compliance hold that the legislators intended the misdemeanor penalty imposed to be exclusive and the transaction effective even though the certificate is not transferred in compliance with the statute. 36 Minn.L.Rev. 77 (1951) note 10. Virginia's Supreme Court of Appeals, however, has held that a transfer is void if no certificate of title is delivered to the assignee and the Court has stated that a "proper assignment of title" must be delivered. Thomas v. Mullins, supra, 153 Va. at 391, 497, 149 S.E. 494. We must now consider whether acknowledgment by the assignor

of his signature on the back of the title certificate is equally as necessary to effectuate a transfer of title between the parties for insurable interest purposes as delivery of the endorsed certificate itself.

Virginia's Motor Vehicle Act uses the certificate of title as a substitute recording system as well as the conclusive evidence of ownership. 46 Va.L.Rev. 754, 764 (1959). Historically in Virginia the requirement of acknowledgment of a document has generally related to recordability of the document and not to its effectiveness in consummating a transfer of title between the parties. And it is reasonable to assume that acknowledgment in § 46.1–87 is also related to the Acts recording or notice function. Peatross v. Gray, 181 Va. 847, 27 S.E.2d 203 (1943).

In this case no notice problems are raised and no third persons are involved insofar as the transfer of title is concerned. No denial of the voluntariness or effectiveness of this act has been asserted by the seller Crowder. Indeed, his testimony reasserts that he was completely satisfied with the sale. As the Court of Appeals for the Fourth Circuit recently stated in a similar case:

> "The statute [South Carolina] relates to property rights in automobiles. The carriers assert no property interest in the 1960 Chevrolet Impala. They have none. Concededly, either Alexander [buyer] or Bob Edwards [seller] (or both of them) 'owned' the automobile. To solve the problem of insurance liability we are concerned *only* with

to him a manufacturer's or importer's certificate for it; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title, or manufacturer's or importer's certificate for said motor vehicle, for a valuable consideration.

"*No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:*

"(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with sections 4505.01 to 4505.19, inclusive, of the Revised Code.

"(B) By admission in the pleadings or stipulation of the parties." (Emphasis added)

7. See 47 Calif.L.Rev. pp. 578–586 for analysis of varying states provisions in this regard.

ownership 'as between' them—*not* as to others. Indeed, no others assert ownership." (bracketed material added) Lynch, et al. v. United States Branch, General Accident Fire and Life Assurance Corp., Ltd. (4 Cir., 327 F.2d 328).

These circumstances distinguish this case from Holt Motors Co. v. Casto, et al., 136 W.Va. 284, 67 S.E.2d 432 (1952) in which the West Virginia Supreme Court in construing the Virginia statute in the light of Storm, supra, held that acknowledgment was necessary to pass title. There the seller who failed to acknowledge was repudiating the sale, and a third party who got the automobile from the buyer was relying on the faulty title certificate and his possession of the car. No insurable interest question was involved, the action being a possessory one by the original seller to get the car back.

This Court therefore holds that under the peculiar circumstances of the case at bar when viewed in light of the Virginia statute and the Virginia Court's interpretation of it thus far that *as between the parties for insurable interest purposes only* no acknowledgment of the seller's signature is necessary to accomplish a transfer of title so long as the title certificate is endorsed and delivered to the buyer.

In so holding this Court realizes its position is somewhat tenuous in light of the Storm case, and the "proper assignment of title" dicta in Thomas v. Mullins, supra, and the case of Holt Motor Co. v. Casto, et al., supra.

It realizes that what this holding does is say that title or ownership may pass for some purposes but not for others (see Lynch, et al v. United States Branch Gen. Accident Fire and Life Assn. Corp. Ltd., supra) that this result is contrary to the simple, straightforward interpretation which exists at the present time in Virginia, and that it might not be sustained upon review. Therefore an analysis of the remaining three questions will be undertaken, assuming arguendo that an acknowledgment is necessary to transfer title under the circumstances of this case.

Question Three: Did Crowder actually acknowledge his signature before Powell?

As has already been indicated, this Court holds that there is no genuine issue of fact between the parties on this point. Crowder testified in his deposition that he did acknowledge his endorsement before Powell, and Powell's writing on the certificate of title indicates that he was present at the time and did take the acknowledgment.

█ Question Four: If Crowder did actually acknowledge his signature, does the absence of the notary's signature on the certificate of acknowledgment incorporated in the certificate of title form vitiate the acknowledgment for the purpose of passing title to the automobile between the parties?

Va.Code Ann. § 46.1–87 speaks of acknowledgment as a positive act on the part of the transferor. It is something he shall do. Whether the notary signs the certificate of acknowledgment relates only to proof of whether the act was done. Ihrig v. Ihrig, 78 W.Va. 360, 88 S.E. 1010 (1916). This Court has found as a fact beyond dispute that Crowder did acknowledge his signature before Powell. The absence of Powell's signature, having been considered in making the finding, does not vitiate the acknowledgment for the purpose of passing title between the parties for insurable interest purposes. Payne v. Dearborn Nat. Cas. Co., 328 Mich. 173, 43 N.W.2d 316 (1950).

█ Question Five: If the acknowledgment was otherwise sufficient to allow title to pass between the parties, did Powell's position as a partner in the buying firm make him incompetent to take Crowder's acknowledgment?

Va.Code Ann. § 46.1–87 requires that the transferor "shall acknowledge his signature * * * before a person authorized to administer oaths * * *." No one questions that Powell was a duly appointed notary public generally au-

thorized to administer oaths. Travelers asserts, however, that Powell was incompetent to acknowledge this particular signature because he had an interest in the transaction. Travelers cites a line of Virginia cases dealing with acknowledgments under the conventional recording statutes (Va.Code Ann. §§ 55–106, 55–113) to the effect that the act of acknowledgment is a judicial one and that any person having an interest in a transaction may not acknowledge another person's signature relating to that transaction. Bowden v. Parrish, 86 Va. 67, 9 S.E. 616 (1889) (trustee in a deed of trust disqualified even though only interested to the extent of his commission. But see Va.Code Ann. § 55–124); Corey v. Moore, 86 Va. 721, 11 S.E. 114 (1890) (grantee in a deed not allowed to take grantor's acknowledgment); Davis v. Beazley, 75 Va. 491 (1881) (grantor disqualified to take his own acknowledgment). Cases from other jurisdictions have stated that acknowledgments taken by an interested party are not sufficient to meet motor vehicle transfer statute requirements. Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975 (1947); Fitzgibbon Discount Corp. v. Roberts, 283 S.W.2d 906 (Mo.App. 1955).

The Virginia Supreme Court of Appeals however has not yet construed Va. Code Ann. § 46.1–87 on this point, and the phrase "shall acknowledge his signature * * * before a person authorized to administer oaths" nowhere appears in the recording statutes which have been construed. Taken in the strict sense Powell was "a person authorized to administer oaths" in Virginia. Furthermore the Virginia Division of Motor Vehicles has filed an affidavit in this case stating that:

"* * * the policy of the Division of Motor Vehicles with reference to the acknowledgment of signatures on certificates of title is to accept acknowledgments by any notary public so long as a notary public (or other person authorized by law to administer oaths) does not attempt to acknowledge his own signature.

"(4) That the Division of Motor Vehicles would not reject or disapprove an acknowledgment of a seller's signature by a notary public who is a partner in a firm to whom the motor vehicle is being sold."

Since the Division of Motor Vehicles in Virginia is empowered to make such reasonable rules and regulations as may be necessary to carry out the laws administered by the Division, which include Va.Code Ann. § 46.1–87 (Va.Code Ann. §§ 46.1–25, 46.1–26), this interpretation is entitled to substantial weight and respectful consideration from this Court. Mogis v. Lyman-Richey Sand and Gravel Corp., 189 F.2d 130 (8th Cir. 1951) cert. denied 342 U.S. 877, 72 S. Ct. 168, 96 L.Ed. 659; Orme et al. v. Lendahand Co., Inc., 76 U.S.App.D.C. 49, 128 F.2d 756 (1942); Rosanfield, Administrative Determinations as State Law under Erie v. Tompkins, 24 N.Y. U.L.Q.Rev. 319 (1949). As Charles Alan Wright states at 205 of his new hornbook Federal Courts (West Publishing Co. 1963):

"* * * the long-continued construction of a state statute by the state agency charged with administering it may be accepted by the federal court as representing the state law, even where the language of the statute, to an outsider, might appear to require a different construction."

And Virginia's own Supreme Court of Appeals has recognized that deference must be paid to findings by an agency of the state operating within its proper authority. Virginia Bankers Ass'n. v. Harrisonburg Loan and Thrift Corp., 203 Va. 368, 124 S.E.2d 181 (1962).

It has been argued to this Court that to invalidate the Division of Motor Vehicles policy regarding this statute by holding that a partner's interest in a transaction in which the partnership is involved disqualifies him to take an acknowledgment related to that transaction would unsettle scores of automobile titles

**966**

in this state since the Division has accepted many such acknowledgments in the past. This result we are very loathe to bring about, particularly since the Division's policy is in strict line with the language of the statute.

Furthermore it cannot be denied that Crowder, as a layman, went about selling his automobile with a thoroughness and a propriety under the law which is impressive in its cumulative effect. He took his certificate of title with him the evening he intended to consummate the sale. He signed and acknowledged his signature before a man who properly told him that he was a notary public and authorized to take acknowledgments. He had no knowledge of Powell's failure to sign the certificate of acknowledgment, and after receiving full payment for the car he delivered the title certificate to Powell along with possession of the automobile in the belief that the sale had been completely consummated. He then went home, informed his insurance agent that he had sold his car, and cancelled his insurance. There was not much more that he could have done except possibly some legal research on the law of acknowledgments which would have warned him that an interested notary public might not be competent to take his acknowledgment. And even if he had done this, Powell would probably have told him he was crazy since the Division of Motor Vehicles had been accepting identical acknowledgments for years. In conjunction with the law discussed above, such circumstances as these cannot fail to influence the court in deciding a question of ownership.

We therefore hold that Powell's position as a partner in the buying partnership did not make him incompetent under Va.Code Ann. § 46.1–87 to take Crowder's acknowledgment.

Our conclusions then are as follows: First, regardless of the status of legal title, Powell was not operating the Corvair at the time of the accident with permission of the insured Crowder within the meaning of Nationwide's policy. We further conclude that ownership of the automobile *as between the parties and for insurable interest purposes only* passed to Scott-Powell because (1) no acknowledgment by Crowder was necessary under Va.Code Ann. § 46.1–87 to accomplish such a result, and (2) even if acknowledgment were necessary, it was done within the meaning of § 46.1–87. Nationwide therefore is relieved of any obligation under its policy to defend the uninsured motorist or to pay any legal liability incurred by him.

Therefore, an order granting Nationwide's Motion for Summary Judgment will be entered.