In the Matter of Beverly Clarence SMITH, Bankrupt.

In the Matter of Eunice Beaton KIRLES, Bankrupt.

In the Matter of Kenneth Dewey PATTERSON, Bankrupt.

Nos. 23579, 23672, 1753.

United States District Court
E. D. Virginia,
Norfolk and Newport News Divisions.

Aug. 1, 1966.

Edward W. Wolcott, Norfolk, Va., for GMAC.

Jerrold G. Weinberg, Norfolk, Va., for petitioning creditor, Mary F. Kleever.

Cadwallader, J. Collins, Norfolk, Va., for trustee.

Fred E. Martin, Jr., Norfolk, Va., for petitioning creditor, Bank of Chesapeake.

Jerrold G. Weinberg, Norfolk, Va., trustee.

F. Thompson Wheeler, II, Newport News, Va., for petitioning creditor, Thomas W. Kidd.

Philip L. Avis, Newport News, Va., trustee.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

These three cases, involving substantially common questions of law and fact, are before the court on petitions for review filed by certain alleged lien creditors objecting to orders entered by the referee in bankruptcy holding that the rights of the trustee in bankruptcy are superior to those of the alleged lien

creditors. The matters are of importance to the commercial world in financing automobiles in Virginia.

Basically the primary issue centers around the interpretation of § 46.1–72 of the Code of Virginia, 1950, as amended, which reads:

"If application for the registration or recordation of a lien or encumbrance to be placed upon a motor vehicle, trailer or semitrailer *be filed* in the office of the Division in the city of Richmond, Virginia, within ten days from the date of such applicant's purchase of such motor vehicle, trailer or semitrailer, it shall be as valid as to all persons, whomsoever, including the Commonwealth, as if such registration had been done on the day such lien or encumbrance was acquired."

The question is—What constitutes the act of *filing?*

In each of these cases the applications for title certificate in compliance with § 46.1–87, accompanied by the required fee were properly completed (except for the acknowledgment in the Smith case), showing the lien to be placed upon the face of the new certificate, and were *received* by the Division of Motor Vehicles prior to the adjudication in bankruptcy. However, due largely to the volume of work in the Division, the certificates were not processed and approved until after bankruptcy intervened, other than in *Kirles* where the "approval" was prior to bankruptcy. The referee, not without reason, held that the respective liens which were placed upon the face of the title certificates subsequent to bankruptcy were inferior to the rights of the trustee. The theory supporting the referee's conclusion is that, prior to the amendment of § 46.1–72 (formerly § 46–72 of the Code of 1950, and § 2154(64) of the Code of 1942, and § 2154(1)–

2154(21) of the Code of 1924) in 1934, the statute read in part:

"Provided that if such registration of a lien or encumbrance upon a new motor vehicle, new trailer or new semitrailer be done within ten days from the time application for certificate of title for same *has been received* by the division, it shall be as valid as to all persons whomsoever including the commonwealth as if such registration had been done on the day such lien or encumbrance was acquired."

With deference to this reasoning, and mindful of the fact that the legislative history indicating the change from "has been received" to "be filed" is nil, the Court concludes that a fair reading of the new and old statutes compels a contrary conclusion to that reached by the referee.

The office of the Motor Vehicle Commissioner was first created by the General Assembly of Virginia in 1924, Acts of Assembly, 1924, Ch. 99, p. 98. In 1926 the General Assembly enacted the first legislation relating to registration and certificates of titles to motor vehicles, including the showing of liens or encumbrances thereon. Acts of Assembly, 1926, Ch. 149, Title II, p. 264 et sequi. From the initial bit of legislation the word "file" with the Motor Vehicle Commission has been used. Similarly, the word "receive" has been used. For example, § 11(a) of the Acts of 1926 is essentially the same as § 46.1–68 of the Code of 1950, as amended.[1] Each refers to "receiving". But even back in 1926 the word "file" is likewise adopted where, under § 11(b) providing for liens and encumbrances, it is said that they must be shown on the certificates of title, and then follows:

"In such cases, the owner shall *file* application with the motor vehicle

1. Section 11(a) of the Acts of 1926 reads: "The department upon registering a vehicle and *receiving* an application for a certificate of title therefor shall issue to the owner a registration card and a certificate of title therefor as separate documents."

Section 46.1–68 of the Code of 1950, as amended, reads: "The Division upon *receiving* an application for a certificate of title for a motor vehicle, trailer or semi-trailer shall issue to the owner a certificate of title therefor and a registration card as separate documents."

commissioner, on a blank furnished for that purpose, setting forth the said lien or liens and such information in connection therewith as the said commissioner may deem necessary, and the commissioner, *if satisfied that it is proper that the same be recorded,* and upon surrender of the title covering said motor vehicle, shall thereupon issue a new certificate of title showing said liens or encumbrances in the order of their priority, said priority being according to the date of the *filing of said application for same."*

From the foregoing it manifestly appears that the words "file" or "filing" refer to the date when the application was received if then in proper form for recording, including the payment of the required fee which, in 1926, was $1.00.

The 1926 Act also provided under § 11(c) that the certificate of title should show on its face the date the certificate was "issued"—not necessarily the date that the application was "filed", although conceivably it was possible in former days to "issue" the certificate on the same day the application was "filed" and/or "received".

When the statutes were recodified in 1942 the registration of titles, liens, etc., was contained in § 2154(63) (64). Section 2154(63) provides in part:

"The division shall *file each application received,* and when satisfied as to the genuineness and regularity thereof, and that the applicant is entitled thereto shall *register* the vehicle therein described and the owner thereof in suitable books or on index cards, as follows: * * *"

Section 2154(64) of the Code of 1942 contains, in substance, what is now codified as §§ 46.1–68 to 46.1–86, both inclusive, in the Code of 1950, as amended. The words "upon receiving an application" are retained, and require the issuance of a certificate of title showing any lien on the face of the certificate with the priority being according to the information shown on the application. Section 46.1–70 refers to liens subsequently created and refers to the priority

"according to the date of the *filing of the application"*, and requires that "the owner shall *file* application with the Division on a blank furnished for that purpose". The same provisions are contained in § 2154(64) (b) of the Code of 1942.

The Court concludes that the words "received" and "filed" or "file" are synonymous. It is believed that the intent of the General Assembly in amending the statute in 1934 was for the purpose of providing that title certificates and liens thereon be registered with one central state agency in the City of Richmond, namely, the Division of Motor Vehicles. General Credit, Inc. v. Winchester, Inc., 196 Va. 711, 85 S.E.2d 201, 204. The evidence in the Smith and Kirles cases demonstrates that, while there would be some inconvenience, information as to the status of a title already received, but being processed, could be procured by any interested party.

We think, however, that the word "filed" as used in § 46.1–72, while synonymous with the word "received", contemplates that the documents must be in approved form for final recordation and the issuance of the title certificate. Thus, the lien would not be good under § 46.1–72 if the necessary fee did not accompany the application, or the documents were otherwise not in compliance with the statute, or were not signed, etc. In other words the "receiving" and "filing" speaks as of the date of the "receipt" of the application for lien purposes if, and only if, they appear to be in proper form for recordation. § 46.-1–70. We likewise think it clear that the application must be "received" at the office of the Division of Motor Vehicles in the City of Richmond, and that delivery and receipt at one of the many branch offices throughout the state is insufficient as it violates the principle that notice to the world must be available at one central place. Maryland Credit Finance Corp. v. Franklin Credit Finance Corp., 164 Va. 579, 583, 180 S.E. 408, 409, 410 (involving the error of the

Division of Motor Vehicles in not showing the lien upon the face of the certificate with a judgment creditor's rights intervening before the error could be corrected, the Court holding that the judgment creditor was entitled to priority over the finance company whose lien was not shown on the face of the title). Non-compliance with the statute does not bring the delinquent party within its beneficial provisions. Thomas v. Mullins, 153 Va. 383, 149 S.E. 494; 45 Virginia L.R. 754, 758.

■ In each of the cases before the Court the applications for the certificates of title, with a lien to be shown thereon, were received in the office of the Division of Motor Vehicles in the City of Richmond prior to bankruptcy, but the new certificates showing the liens thereon were not actually issued and dated until after bankruptcy had intervened. While not in point factually, the ancient case of Horsley v. Garth, 2 Gratt. 472, gives some insight into the effect of the recording acts. In that case certain judgments obtained against Horsley during the April term 1836, which by operation of law related back to April 1, 1836 (the first day of the term), were held to have priority over a deed of trust marked "filed" on March 31, 1836, but, according to proof adduced, not actually delivered to the clerk for recordation until April 1, 1836. Because an unsuccessful effort was made to reach the clerk prior to midnight on March 31, the clerk was persuaded to mark the trust deed as having been "recorded" on that date when, in fact, it had not been delivered to him for recordation until April 1, 1836. Hence, the time of delivery for the purpose of recordation was deemed to be the controlling date. Since § 46.1-72 does not specify that the application for registration or recordation of a lien need be delivered to any particular officer but, in fact, refers only to "filing" in the "office of the Division in the city of Richmond, Virginia", we conclude that, if the documents were in proper form for recordation and accompanied by the required fee, they were, in fact, "filed" as of the date that they were received by the "office of the Division" in the City of Richmond. See 45 Am.Jur.Records and Recording Laws, § 138, p. 501. We draw analogy to the general recording statute, § 17–59 of the Code of Virginia, 1950, which does not mention the moment of *delivery* but requires the clerk to endorse on "[e]very writing authorized by law to be recorded" the day and time of such *recordation*. We know, of course, that the document thus presented to the clerk or deputy clerk for recordation is not, at that moment, actually spread upon the permanent book for recordation purposes, but it is available for inspection by the public. The evidence in the Smith and Kirles cases now before the Court— which may be similarly treated for like purposes in the Patterson case—demonstrates that, while there may be difficulties encountered, the application "received" could be located in the office of the Division.

There is nothing in the statute requiring the Division to "approve" the application within ten days. It merely states that when the application is "approved", it shall be valid as if the registration had been done on "the day such lien or encumbrance was acquired".

The lienholders are further supported in their argument by Universal Credit Co. v. Botetourt Motor Co., 180 Va. 159, 21 S.E.2d 800, where there is a strong inference that the date of the receipt of the application is controlling.

■ We have not discussed the well-established principle of law that a bankruptcy court is a court of equity as we do not think it necessary to do so. We only observe that there is nothing that the lien creditors did, or failed to do, which caused any delay either in the "approval" or actual "issuance" of the title certificates showing the liens thereon. The delay was occasioned by the tremendous volume of mail, including applications, received daily by the Division which, at certain times of the year, precluded more prompt attention to such matters. If the equities are to be con-

sidered, we note that the case of In re Lowry, 4 Cir., 40 F.2d 321, stands for the proposition that a certificate of title for an automobile registered in Virginia showing the wrong motor number was sufficient to pass title as against the claim of the trustee in bankruptcy, under the doctrine of equitable principles.

We do not agree that C. I. T. Corporation v. W. J. Crosby & Co., 175 Va. 16, 7 S.E.2d 107, is controlling on the issue here presented. It deals with the necessity of registration if the motor vehicle is continuously operated in Virginia even though the purchase or lien may have been the creature of another state.

We turn then to the facts of these cases. In *Smith*, the now bankrupt purchased a new Cadillac from Hoff Cadillac-Oldsmobile, Inc., on October 20, 1965. Contemporaneous with the purchase he executed a conditional sales contract and application for title certificate showing a lien thereon in favor of General Motors Acceptance Corporation. Smith admits that he signed the application for title showing the lien thereon, *but the evidence is uncontradicted that he did not certify this application for a certificate of title before a person authorized to administer oaths* as required by § 46.1–51 of the Code of Virginia, 1950, as amended.[2] Assuming that the purchase was made on October 20, 1965, the face of the certificate shows that it was not acknowledged until October 25, 1965. The evidence is also uncontradicted that Smith did not return to the seller's place of business, where the Notary was located, after the day of the purchase. It follows that Smith could not have acknowledged the application and his signature thereto before Billie West Ryan, a Notary Public. The documents, apparently valid on their face, were forwarded to the Division in Richmond where they were stamped as received on October 27, 1965. Smith was adjudicated a bankrupt on October 29, 1965. The application went from the Division's mailing room to a clerk in the title section where it was "approved" for issuance on November 1, 1965. It was then fed into an IBM processing machine and "stamped out" on November 17, 1965, with the title issued in the name of Beverly C. Smith showing a lien thereon in favor of GMAC in the sum of $6073.92 evidenced by a conditional sales contract. The face of the title certificate is in fact, a certificate by the Commissioner, Division of Motor Vehicles, reciting in part:

> "I do further certify that *upon the statement of facts made under oath, contained in said application,* I am satisfied that the applicant is the lawful owner \* \* \* and that it appears upon the official records of my office that at the date of the issuance of this certificate, said motor vehicle is subject to the liens hereinafter enumerated, if any, and none other."

The delay between receipt of the application and the final issuance date is satisfactorily explained by the Deputy Commissioner of Motor Vehicles who stated that the Division received an average of eleven to fifteen sacks of mail per day, and there are from 3000 to 4000 applications for titles and/or liens contained therein. There is a "look-up" section which searches for applications in process if specific inquiries are directed to the Division.

 In the *Kirles* case, the documents were executed by the now bankrupt on November 11, 1965. They were turned over to the *Norfolk* office of the Division of Motor Vehicles on November 12, 1965. They were received by the

---

2. The application for title with lien thereon was signed by "Beverly C. Smith". The form reflects that Smith, for the purpose of obtaining the title certificate, stated "under oath the following facts". The facts were all correctly stated therein. At the bottom of the form, immediately above Smith's signature appear the words "Application must be signed and acknowledged". To the right of Smith's signature are the words "All answers supplied and completely subscribed and sworn to before me this 25 day of Oct. 1965. My commission expires September 19, 1969. Billie West Ryan, Notary Public."

Division in the *City of Richmond* on November 16, 1965. The application was "approved" for issuance of title on November 26, 1965. Eunice Beaton Kirles was adjudicated a bankrupt on December 6, 1965. The certificate of title showing the lien thereon was issued by the Division on December 10, 1965. The referee held that, despite the "approval" prior to bankruptcy, the controlling date was the date of final issuance. In so holding we think that the referee was manifestly in error. The lien of the Bank of Chesapeake is clearly superior to the rights of the trustee in bankruptcy, there being no suggestion that the application was improperly acknowledged, executed, etc.

In the *Patterson* case, the necessary documents were properly executed and acknowledged on November 11, 1965. The application to record a lien upon the title certificate, together with the certificate of title, was delivered to the Division at its *Hampton*, Virginia, office on November 12, 1965. The documents were received at the Division's office in Richmond on November 16, 1965. Kenneth Dewey Patterson was adjudicated a bankrupt on November 19, 1965. The application was "approved" for the issuance of a new title showing the lien thereon on November 24, 1965. The title certificate showing the lien thereon was actually issued on November 26, 1965. In accordance with the ruling herein made to the effect that the date of receipt constitutes the date of filing, if the documents are in proper order, properly executed and acknowledged, with the required fee paid, the lien attached on November 16, 1965, and the rights of Thomas W. Kidd, the lienholder, are superior to those of the trustee in bankruptcy.

The *Patterson* case presents the additional question as to placing a lien upon a *used* car. It is true that the ten day saving clause as prescribed by § 46.-1–72 is only applicable to a *new* vehicle whereas § 46.1–70 governs the placing of liens and encumbrances upon *used* vehicles. Consistency, however, requires a uniform interpretation of the legislative intent. Where the owner properly forwards to the Division, on a blank furnished for that purpose, the necessary documents, properly executed and acknowledged, setting forth the lien to be placed upon the certificate of title, together with the required fee, the lien attaches as of the date of the receipt of the documents in the office of the Division in the City of Richmond. Manifestly this is the legislative intent where it is said as to priority that "the priority being according to the date of the filing of the application for same".

We revert to the false acknowledgment in the *Smith* case. One of the primary purposes of the Virginia Motor Vehicle Act is the suppression of automobile thefts. Janney v. Bell, 4 Cir., 111 F.2d 103, 107. It is a known fact that automobile dealers throughout Virginia have been lax in their duties with respect to acknowledgment of signatures on title certificates and applications for lien. Seldom is a whiskey conspiracy case tried which does not involve an application for title taken under an assumed name, with a purported acknowledgment before a young lady in the office of the automobile dealer who, for fear of losing employment, signs as a notary public without ever seeing the party in whose name the title is to be placed. In some instances liens are placed upon the title certificates. The same situation exists with respect to automobile theft cases which are frequently complicated conspiracies. As the lending institutions permit the dealers to handle all title documents they are in effect technical parties to any improper practices in the execution of the documents. In this case the notary public was an employee of the automobile dealer and the forms for financing the automobiles sold by the dealer were left with the dealer by the financing institution.

Counsel for GMAC vigorously contend that the acknowledgment cannot be collaterally attacked under Virginia law. If this proceeding should be construed as a collateral attack upon the

acknowledgment, then § 46.1–51 requiring that "The owner shall certify every application for a certificate of title before a person authorized to administer oaths" would be meaningless. As was said in Thomas v. Mullins, supra:

> "A noncompliance with the statute subjects the seller to fine and imprisonment and defeats the recovery based upon a contract obnoxious to the statutory requirements. The imposition of the penalty is to protect the public against fraud and to compel the proper registration of titles."

■ Since the statute is thus held to be essentially a police regulation, enacted primarily for the protection of the public, its provisions are mandatory in their terms. The law cannot be evaded by innocent neglect. Foster v. Beall (Tex.Civ.App.) 242 S.W. 1117, 1118, cited with approval in Thomas v. Mullins, supra.[3]

We are not here concerned with balancing the rights of Smith against GMAC. Under § 70c of the Act of Bankruptcy, the trustee is vested with the rights, remedies and powers of a lien creditor as to any property which could have been levied upon and sold while in possession of the bankrupt.

■ While we agree that to impeach the certificate of acknowledgment of a duly authorized officer the proof must be clear, cogent, satisfactory, and convincing beyond reasonable controversy, Webb v. Trent's Executor, 162 Va. 500, 174 S.E. 755, 758, we do not go along with the argument that where the factual situation is uncontradicted to the effect that the signer of the document never appeared before the officer authorized to take the acknowledgment and never otherwise authorized same, a court is powerless to consider the admitted facts where the recordation of the lien is essential to its validity and the rights of creditors are involved. Cf. Harlan v. Weatherly, 183 Va. 49, 31 S.E.2d 263, 265. There is a distinction between cases in which there is an appearance before the officer, together with a denial of what took place, and where there is admittedly no appearance before the officer. In the former situation the acknowledgment cannot be collaterally attacked and can only be impeached for fraud or imposition, but in the latter class of cases no fraud need be shown by the party whose acknowledgment is in question and the certificate may always be impeached, even as against bona fide purchasers and mortgagees without notice who rely upon the acknowledgment. 1 Am.Jur.(2d), Acknowledgments, § 99, p. 513.

■ If § 46.1–51 is in fact mandatory, and the evidence undeniably demonstrates that there was noncompliance with same, then the purported lien is ineffective as having not been properly recorded and is inferior to the rights of the trustee in bankruptcy. Since the proper recordation of the lien is essential to substantiate the claim of GMAC, and the bankrupt was in actual possession of the automobile as of the date of bankruptcy,[4] the trustee must prevail.[5]

3. In Ohio Farmers' Insurance Co. v. Todino, 111 Ohio St. 274, 145 N.E. 25, 26, 38 A.L.R. 1118, also cited with approval in Thomas v. Mullins, supra, it is said: "The courts are in accord that, where a statute is enacted to protect the public against fraud or imposition, or to safeguard the public health or morals, *a contract in violation thereof is void*, even though a money penalty also is exacted." It should be noted, however, that Ohio has a statute which specifically makes void and ineffectual any attempted transfer which does not comply with the Act. Page's Ohio Revised Code,

§ 4505.04. In this respect the Ohio Act differs from Virginia, but the remaining features of the Ohio Act are strikingly similar to Virginia.

4. This distinguishes the present case from Janney v. Bell, 4 Cir., 111 F.2d 103, where the creditor had lawful possession of the automobiles as of the date of bankruptcy and was virtually in the position of a pledgee.

5. There is some intimation that if the lien is invalid, then title never passed to the now bankrupt. This argument is without merit as the execution of the

While not precisely in point, the case of Travelers Indemnity Co. v. Nationwide Mutual Insurance Co., W.D. Va., 227 F.Supp. 958, contains an exhaustive analysis of the effect of a defective or improper acknowledgment. Our sister state of West Virginia had occasion to construe the Virginia statute in Holt Motors, Inc. v. Casto, 136 W.Va. 284, 67 S.E.2d 432, holding that an actual acknowledgment was required under Virginia law. True, Travelers Indemnity Co. v. Nationwide Mutual Insurance Co. finally concluded that, *as between the parties for insurable interest purposes only,* no acknowledgment was necessary to accomplish a transfer of title where the title certificate is endorsed and delivered to the buyer. In Nationwide Insurance Company v. Storm, 200 Va. 526, 106 S.E.2d 588, the Supreme Court of Appeals of Virginia considered the requirements of § 46–84 (now § 46.1–87 which is a parallel to § 46.1–51 in that it requires the owner to "acknowledge his signature thereto before a person authorized to administer oaths") as mandatory, citing Thomas v. Mullins, supra. As technical as these requirements may be, they serve a beneficial purpose and, if changes are to be made, it is for the legislative body and not the judicial branch.

We need not enter into an extended discussion of authorities relied upon by GMAC to the effect that the taking and certifying of acknowledgments is a judicial act and the certifying officer's determination of the matters involved has the conclusive force and effect of a judgment, importing absolute verity and cannot be collaterally attacked.[6] Irrespective of this general principle of law, evidence of the notary has been permitted to impeach an acknowledgment where the party who appeared before the officer was shown to be not the same party whose name appeared on the deed. Boyd v. Dalton, 169 Va. 17, 192 S.E. 692.

conditional sales contract by the automobile dealer as "seller" and Smith as "purchaser" is sufficient to make Smith the "owner".

Since the automobile dealer permitted possession and ownership of the vehicle to pass to Smith, without properly reserving title under a contract which was legally in proper form for recordation, the trustee took title to the vehicle as of the date of bankruptcy and GMAC is only a general creditor of the bankrupt estate.

Orders will be entered in each of the cases consistent with the views expressed herein.

6. Murrell v. Diggs, 84 Va. 900, 6 S.E. 461; McCauley v. Grim, 115 Va. 610, 79 S.E. 1041; Martin v. Williams, 194 Va. 437, 73 S.E.2d 355.