**GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,**

**v.**

**Alexander P. SMITH, Trustee in Bankruptcy, Appellee.**

**In the Matter of Beverly Clarence SMITH, Individually and formerly a partner trading as South Norfolk Towing Company, Bankrupt.**

**No. 10943.**

United States Court of Appeals Fourth Circuit.

Argued March 10, 1967.

Decided May 16, 1967.

Edward W. Wolcott, Norfolk, Va. (Wolcott, Wolcott & Payne, Norfolk, Va., on brief), for appellant.

Cadwallader J. Collins, Norfolk, Va. (Mann & Collins, Norfolk, Va., on brief), for appellee.

Before SOBELOFF and CRAVEN, Circuit Judges, and SIMONS, District Judge.

CRAVEN, Circuit Judge:

This case presents the question of priority of rights in a Cadillac possessed by Clarence Smith when he was adjudicated a bankrupt on October 29, 1965. The district court held that the interest of the trustee in bankruptcy prevailed over the interest of General Motors Ac-

ceptance Corporation, and GMAC appeals.[1]

The facts found by the district judge are not in dispute. They are that on October 20, 1965, Smith sought to purchase a new Cadillac from Hoff Cadillac-Oldsmobile in Norfolk. The purchase was financed by GMAC through use of a conditional sales agreement. The conditional sales contract and an application for a Virginia certificate of title showing a lien in favor of GMAC were signed by Smith on October 20, 1965.

The application form recites that Smith, for the purpose of obtaining the certificate of title, stated under oath the facts set out therein. The district court found that the facts in the application were all correctly stated, but that Smith did not "certify" the application for a certificate of title before a person authorized to administer oaths, as required by Section 46.1–51 of the Virginia Code.[2] A notary public employed by Hoff Cadillac-Oldsmobile completed and signed the notarial certificate in the application on October 25, five days after Smith had subscribed to the application.[3] Smith was not then present.

The application, apparently valid on its face, was forwarded along with the required fee and other necessary papers to the Division of Motor Vehicles in Richmond. It was received in the mail room of the Division on October 27, 1965, and was approved for issuance by a clerk in the title section on November 1. On November 17 a certificate of title was issued in the name of Beverly C. Smith showing a lien in favor of GMAC in the amount of $6,073.92.

Smith was adjudicated bankrupt on October 29, nine days after he acquired the Cadillac and two days after the application for title (showing lien) was received by the Division of Motor Vehicles.

■ In determining the priority of liens at bankruptcy the trustee is deemed a lien creditor as to all property on "which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy * * *.[4] The issue with which the district court dealt in this controversy, therefore, was whether GMAC acquired a lien valid as against subsequent lien creditors prior to October 29, when the trustee's lien was deemed to attach to the bankrupt's property. This determination, of course, is to be made according to state law. E. g., McKay v. Trusco Finance Co., 198 F.2d 431 (5th Cir. 1952).

Virginia law provides that when issued a certificate of title showing a lien is adequate notice to all creditors and purchasers, without further recordation,

---

1. The opinion of the district court is reported at In re Smith, 256 F.Supp. 844 (E.D.Va.1966). Since this controversy arose, the statutes involved have been amended in impertinent respects. Citations in this opinon, as in the opinion of the district court are to the prior statutory language.

2. Va.Code § 46.1–51 reads:
   "Application for certificate of title.— An owner shall make application for a certificate of title upon appropriate forms to be prescribed and furnished by the Commissioner. The owner shall certify every application for a certificate of title before a person authorized to administer oaths. Officers and employees of the Division may administer oaths for the purpose of this title and shall do so without fee."

Va.Code § 46.1–52 provides, inter alia, that "[e]very application for a certificate of title shall contain a statement of the applicant's title and all liens or encumbrances upon the vehicle and the names and addresses of all persons having any interest therein and the nature of every such interest."

3. At the bottom of the application form, to the right of Smith's signature, are the words, "All answers supplied and completely subscribed and sworn to before me this 25 day of Oct. 1965. My commission expires September 19, 1969." The certificate is signed "Billie West Ryan, Notary Public." No notarial seal is on this certificate. None is required in Virginia on domestic notarizations.

4. § 70(c) of the Bankruptcy Act, 11 U.S. C.A. § 110(c).

that a lien against the motor vehicle exists.[5] However, since no certificate of title had been issued on October 29, the date of the adjudication of bankruptcy, GMAC must rely on the Virginia grace period statute, Va.Code § 46.1–72. This statute reads:

"If application for the registration or recordation of a lien or encumbrance to be placed upon a motor vehicle, * * * *be filed* in the office of the Division in * * * Richmond, Virginia, within ten days from the date of such applicant's purchase of such motor vehicle, * * * it shall be valid as to all persons, whomsoever, including the Commonwealth, as if such registration had been done on the day such lien or encumbrance was acquired." (Emphasis added.)

The district court held that the statutory phrase "*be filed* in the office of the Division in * * * Richmond" refers to the date on which an application in proper form is received in the Division's Richmond office accompanied by the required fee. We agree with this interpretation of the statute for the reasons advanced by the district judge. See In re Smith, supra, 256 F.Supp. at 847–849.

The district court ruled, therefore, that since the application in the present case was "filed" before the adjudication of bankruptcy, the GMAC lien would prevail over the trustee's rights in the Cadillac—but for the failure of the bankrupt to "certify" before the notary his application, proper in other respects.

We question the importance accorded by the district court to the failure of the bankrupt to "swear" personally before the notary. There is here no suggestion of fraud or false information furnished the Division of Motor Vehicles. Nor is there any doubt as to the authenticity of the purchaser's signature or the signature of the notary.

The district court noted that "automobile dealers throughout Virginia have been lax in their duties with respect to acknowledgement of signatures on title certificates and applications for lien." In re Smith, supra, 256 F.Supp. at 851. We have no reason to question this finding—if it be assumed that the duty of compliance is upon dealers. But the dealer is not the officer charged with the duty of taking the acknowledgement. It is the notary. Yet, as indicated by the district court, it is general knowledge that notaries are commonly employed by dealers and businessmen and are usually subordinate clerical employees. In the business world an automobile dealer who actually insisted that every car purchaser raise his right (or left) hand and swear an oath would be somewhat unusual. We doubt that even the most conscientious notary in Virginia does more than require signature of the purchaser in his actual presence.

We are concerned that if the district court's decision is permitted to stand it might unsettle thousands of motor vehicle titles and security interests in Virginia. Cf. Travelers Indem. Co. v. Nationwide Mut. Ins. Co., 227 F.Supp. 958, 965, 966 (W.D.Va.1964).

In arriving at its conclusion favorable to the trustee the district court reasoned that there was an effective transfer of title from the Cadillac dealer to Smith—despite Smith's failure to swear an oath before the notary. Perhaps so. Then the district court reasoned that the lien, shown on the same instrument, was not effective as against the trustee because of the same defect held not fatal to transfer of title.

The different results were thought compelled by different theories: that ownership could pass to the buyer without regard to the instrument of title but that the lien was dependent for its maintenance upon the certificate. But this is not altogether clear. As Judge Dobie stated in In re Lowry, 40 F.2d 321, 322 (4th Cir. 1930), "[t]he question * * * arises that if the certificate was sufficient for the one purpose why then is it not sufficient for the purpose of maintaining the lien?" *If* the personal ac-

knowledgement of the application was mandatory for the effective maintenance of the lien, we conclude that under Virginia law it was also required for the transfer of title—in fact, for the transfer of any interest to the bankrupt which could be subjected to a lien. See Sauls v. Thomas Andrews & Co., 163 Va. 407, 175 S.E. 760 (1934).[6]

Indeed it has been strongly suggested that there are good reasons for exacting strict compliance with *title* registration requirements that do *not* pertain to *lien* interests. In Janney v. Bell, Judge Dobie, speaking for this court, stated that

> "We believe a clear distinction can properly be made between sales of motor vehicles when title (or ownership or general property) is supposed to pass between the parties to the transaction, and other claims or liens less than title or ownership. It might well be that these recordation provisions are mandatory as to sales of motor vehicles in that they are designed for three definite purposes: (1) to suppress automobile thefts; (2) to provide the state with a convenient record for tax purposes; (3) to provide a convenient and accessible method of identifying the ownership of an automobile for police purposes in connection with operation of the highways of the state. These three reasons for attaching hard deterrent results to any failure to comply with recordation statutes in connection with automobiles do not exist as to liens or other claims less

than title." 111 F.2d 103, 107 (4th Cir. 1940).

Because we may not speak authoritatively on state law, we attempt to do no more than to decide this case on its facts. Rationale and adoption of theory we leave to the Virginia Supreme Court of Appeals in an appropriate case.

We hold on the facts of this case that the trustee has the inferior interest in the Cadillac. To hold otherwise would unjustly enrich the trustee and general creditors, none of whom were misled by the conduct of GMAC. Cf. Staunton Ind. Loan Corp. v. Wilson, 190 F.2d 706, 709 (4th Cir. 1951). In a bankruptcy proceeding it is especially appropriate to consider equitable principles and to disregard technicalities.

We put our decision on alternative grounds. If the failure to personally "acknowledge" the title application was fatal to the maintenance of the GMAC lien, it was also fatal to the transfer to Smith of any ownership interest which would have vested in the trustee at the date of bankruptcy. Conversely, if the defective "acknowledgment" did not prevent effective transfer of ownership, then likewise it was not fatal to the effective maintenance of the lien recorded on the face of the same instrument.

On remand the district court will require the trustee to surrender the Cadillac to GMAC since its value is now less than the lien.

Reversed.

---

6. A careful reading of the pertinent case law supports, the conclusion that failure to comply with a "mandatory" requirement of the Virginia statutes providing for transfer of automobile titles will prevent the passage not only of legal title but of any interest upon which a lien may be perfected. In Sauls v. Thomas Andrews & Co., the Supreme Court of Appeals held that where there was not a proper assignment of title the "purchaser" had no "legal or equitable" title to the car and his creditors could not "seize" it. See also Nationwide Ins. Co. v. Storm, 200 Va. 526, 106 S.E.2d 588 (1959) (vendor remained owner for purpose of insurance coverage); Holt Motors, Inc. v. Casto, 136 W.Va. 284, 67 S.E.2d 432

(1951) (vendor retained title and right to possession as owner); Thomas v. Mullins, 153 Va. 383, 149 S.E. 494 (1929) (vendor remained owner for purpose of sustaining fire loss); United States v. One Hudson Hornet Sedan, 110 F.Supp. 41 (W.D.Va.1953) (title remained in vendor for purpose of remission of forfeiture); Note, The Protection of Financing Agencies, Automobile Liens, 45 Va.L.Rev. 754, 756–757 (1959); compare Silvey v. Johnston, 193 Va. 677, 70 S.E.2d 280 (1952) (vendor's retention of title was basis for breach of warranty action). But cf. Travelers Indem. Co. v. Nationwide Mut. Ins. Co., 227 F.Supp. 958 (W.D.Va.1964).